590 A.2d 778

**COMMONWEALTH of Pennsylvania**

v.

**Carlos DANIELS, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 19, 1991.

Filed May 8, 1991.

Robert H. Isbell, Sharon, for appellant.

Linda H. Barr, Asst. Dist. Atty., Hermitage, for Com., appellee.

Before HUDOCK, CERCONE and HESTER, JJ.

CERCONE, Judge:

This is a direct appeal from a judgment of sentence. We affirm.

In this case, appellant Carlos Daniels was found guilty by a jury of carrying a firearm without a license, simple assault, recklessly endangering another person, terroristic threats and disorderly conduct. Subsequently, his post-trial motions were denied and appellant was sentenced to serve consecutive terms of not less than two and one-half (2–½) years nor more than five (5) years for the assault and firearm offenses. Appellant was also sentenced to serve a consecutive term of not less than one (1) nor more than two (2) years for the offense of recklessly endangering another person. This appeal followed.

Appellant presents four issues for our review. First, appellant alleges that the lower court erred in refusing to suppress a statement he made to a police officer prior to receiving *Miranda* warnings. Next, appellant contests the sufficiency of the evidence presented by the Commonwealth with regard to his convictions of carrying a firearm without a license, simple assault and recklessly endangering another person. For the reasons outlined below, we reject these allegations.

■ With regard to appellant's suppression argument, we note that our function is to determine:

> [W]hether the record supports the suppression court's factual findings and legal conclusions drawn from those findings. In making this determination, we consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Moreover, when the evidence viewed in this manner supports the factual finding of the suppression court, this Honorable Court can reverse only if there is an error in the legal conclusion drawn from those factual findings.

*Commonwealth v. Reddix,* 355 Pa.Super. 514, 518, 513 A.2d 1041, 1043 (1986) (citations omitted).

Aided by this standard of review, we determine that the following lower court findings of facts are adequately supported by the record. On February 17, 1989, Mark Hopson, the alleged victim of the aforementioned crimes, parked his vehicle on Idaho Street in Farrell. Mr. Hopson parked the car with the driver's side facing the street to enable himself and his two friends to talk to people passing by.

At approximately 10:00 p.m., the victim observed a 1983 Cadillac Seville bearing a personalized California license plate inscribed "Fresh 18" parking in a nearby lot. While he recognized the car as belonging to appellant, Mr. Hopson was unable to ascertain the driver at that time since the automobile had tinted windows. Subsequently, the victim saw appellant standing outside of the car near the trunk area.

Appellant then approached Mr. Hopson and threatened to shoot him 14 times. At the time of this incident, the victim, an eighteen-year-old high school senior, was romantically involved with appellant's estranged wife, Ms. Kim Daniels. During the encounter, appellant pointed a partially hidden gun in the general direction of the victim. The gun was held in a blue whiskey bag.

Mr. Hopson drove immediately afterwards to the Farrell Municipal Building and recounted the incident for Sergeant Daniel Oster and Officer Jerome Campbell. After hearing appellant's story, the officers left to survey the scene of the crime. The victim, meanwhile, provided a more detailed version of the encounter to Officer Gordon Frissora. All of the above-named officers were familiar with appellant and associated him with the aforementioned Cadillac.

After arriving at Idaho Street, Sergeant Oster and Officer Campbell noticed that the Cadillac had been moved to an alley near a bar known as Helen's Grill. Approaching the vehicle, Sergeant Oster was able to observe a blue whiskey bag on the floor of the car between the front seats. The officers entered the bar and approached appellant. The officers then asked appellant to step outside to discuss the complaint. Once outside, they patted him down for weap-

ons and asked appellant for permission to search the automobile. Appellant refused.

Appellant then requested to speak alone with Officer Frissora, who had arrived on the scene after completing his interview with the victim. As the two walked away from the bar, Officer Frissora suggested that appellant might as well surrender the gun and save a towing fee since the police planned to impound the vehicle. In response, appellant told Officer Frissora that the gun was under the front seat.

■ Appellant argues that the lower court erred in failing to suppress his statement to Officer Frissora concerning the gun since it was obtained in violation of his *Miranda* rights. The suppression court rejected this argument, finding that Sergeant Oster had given appellant *Miranda* warnings prior to the accused's conversation with Officer Frissora. Moreover, the lower court concluded that the exchange could not be deemed a custodial interrogation since appellant had initiated the discussion. Reviewing the record, we find that the Commonwealth failed to demonstrate that appellant was provided with *Miranda* warnings. As the following excerpts of the suppression hearing transcripts document, neither Officer Frissora or Sergeant Oster testified as to reading appellant his *Miranda* rights.

On direct examination, Sergeant Oster indicated that Officer Frissora had given appellant his *Miranda* warnings, stating as follows:

Commonwealth: Now, after looking in the car and seeing the blue whiskey bag, what did you and Officer Campbell do?

Oster: We went into Helen's Grille to see if [appellant] was there and found him inside.

Commonwealth: What happened then?

Oster: We asked him to step outside, which he did. We patted him down for weapons at that time. Walked over to his car. I explained to him that we had a complaint

that he had allegedly pulled a gun on Mr. Hopson and asked permission to search his car.

Commonwealth: What happened then?

Oster: He said no, we couldn't search the car. *At that time, I told him that we were going to impound the car and advised Officer Frissora to read him his rights.*

Commonwealth: And was [appellant] going to be arrested then?

Oster: Yes, he would have been.

. . . .

Commonwealth: Now, what happened then after [appellant] was *Mirandized* by Officer Frissora?

Oster: He wasn't taken into custody. He was still standing around. We were waiting for the tow truck to come. [Appellant] was quite agitated. He was yelling to several people across the street and causing somewhat of a disturbance. At one point he did go up the alley with Officer Frissora and spoke to him privately. We waited for the wrecker to come. Once the wrecker arrived, I asked [appellant] if he would come to the station and give us a statement concerning what had happened. He said he would. He was placed in a police car and taken to the station and his car was also towed to the police station.

More importantly, Sergeant Oster stated on re-direct examination that he himself had not informed appellant of his rights, testifying as follows:

Commonwealth: Did you read [appellant] his *Miranda* rights when he got outside?

Oster: Immediately?

Commonwealth: Yes.

Oster: No

Commonwealth: Did you read him his *Miranda* rights at all?

Oster: *Officer Frissora did.*

Commonwealth: But Officer Frissora wasn't on the scene when you were on the scene initially, was he?

Oster: No, he was not.

Commonwealth: How long before Officer Frissora showed up?

Oster: Fifteen seconds, twenty seconds.

Commonwealth: And how long before Officer Frissora came over and talked to [appellant] and read him his rights?

Oster: As long as it would have taken to walk outside, pat him down, walk to the car and ask permission to search.

Further review of the suppression hearing transcripts reveals, however, that Officer Frissora did not advise appellant of his *Miranda* rights. Officer Frissora testified on direct examination as follows:

Commonwealth: Now, what did you see when when you went to the scene?

Frissora: When I went to the scene, I originally parked in front of Helen's Grille and looked up the alley, 75 or 100 feet up the alley the car was parked in the middle of the alley and Sergeant Oster, Officer Campbell and [appellant] were there. I walked up to the scene to offer any assistance or anything I could. As I approached the scene, [appellant] looked at me and said, "I'd like to talk to you."

Commonwealth: Okay, to your knowledge, had he been *Mirandized* yet?

Frissora: I hadn't known sir.

Commonwealth: What did you do when [appellant] asked to speak to you?

Frissora: Called me aside, we walked up the alley 20, 25 feet. I explained to him, I said "Carlos, they are going to tow the car. Why don't you just save yourself $60.00, $70.00 tow bill and storage, you know, unlock the car, he's going to search it anyhow."

Commonwealth: Did [appellant] have any response to that?

Frissora: Yes, he said the gun was in the car, under the seat.

Commonwealth: Now, who initiated the conversation?
Frissora: [Appellant] as I was walking up, he said, "I want to talk to you."
Commonwealth: Was [appellant] *Mirandized* at some point?
Frissora: After that, we walked back to the area. We asked him—I asked him again in front of the sergeant, you know, "will you unlock the car?" No, he wouldn't. Oster then—Sergeant Oster advised—*Mirandized* him at that time. He was *Mirandized,* I think it was 10:20 or 10:21 p.m.

As we stated in *Reddix, supra,* we may only consider the evidence of the prosecution's witnesses and that of appellant which, read in the context of the record as a whole, remains uncontradicted. *Id.* Despite this strict standard of review, we find the lower court's conclusion that appellant was given his *Miranda* warnings unsupported by the evidence proffered at the suppression hearing. Considering the prosecution's evidence, we find that neither police officer testified as to advising appellant of his *Miranda* rights prior to the pertinent discussion. This testimony is consistent with appellant's contention that he was not advised of his *Miranda* rights prior to his discussion with Officer Frissora. Accordingly, we find that appellant was not advised of his *Miranda* rights.

Nevertheless, we still find that the lower court properly declined to suppress appellant's statement to Officer Frissora. As we noted in *Commonwealth v. Fento,* 363 Pa.Super. 488, 526 A.2d 784 (1987), *Miranda* warnings are only necessary when a suspect is undergoing actual custodial interrogation. *Id.,* 363 Pa.Superior Ct. at 492, 526 A.2d at 786. A brief review of the law of this Commonwealth demonstrates that such is not the case here.

In *Commonwealth v. Simala,* 434 Pa. 219, 252 A.2d 575 (1969), our supreme court defined interrogation as police conduct "calculated to, expected to, or likely to evoke admission." *Id.,* 434 Pa. at 226, 252 A.2d at 578. Our supreme court further explained that "... absent any notion of

interrogation, [a] statement [should be] classified as a volunteered statement, gratuitous and not subject to suppression for lack of warnings." *Commonwealth v. Whitley*, 500 Pa. 442, 445, 457 A.2d 507, 508 (1983) (citations omitted).

In this case, appellant initially requested to speak alone with Officer Frissora. Subsequently, the officer suggested to appellant that he should permit the police to search his car in order to avoid towing costs. Despite appellant's protestations, we are unable to define such an encounter as police conduct calculated to evoke an admission. Simply put, we find that Officer Frissora's statement was not advanced with the goal of ascertaining appellant's innocence or guilt, but with the hope that appellant would grant the police permission to examine his car. As such, appellant's utterance must be deemed a voluntary statement. Accordingly, we find that the lower court did not err in denying appellant's motion to deny his statement to Officer Frissora.

As noted *supra*, appellant also contests the sufficiency of the evidence presented by the Commonwealth with regard to his convictions of carrying a firearm without a license, simple assault and recklessly endangering another person. Reviewing the record, however, we find that the lower court has concisely refuted each of these contentions in its opinion dated November 1, 1990. Hence, we affirm the judgment of the lower court with regard to these issues on that basis.

Judgement of sentence affirmed.