656 A.2d 1369

**COMMONWEALTH of Pennsylvania,**

v.

**Gavin McCLOSKEY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1994.

Filed March 30, 1995.

118

Patrick J. Connors, Asst. Public Defender, Media, for appellant.

Louis G. Stesis, Asst. Dist. Atty., Media, for Com., appellee.

Before ROWLEY, President Judge, and KELLY and CERCONE, JJ.

ROWLEY, President Judge:

Appellant Gavin McCloskey was convicted after trial by jury of voluntary manslaughter and recklessly endangering another person. He appeals the judgment of sentence, alleging that the trial court erred in 1) not suppressing inculpatory statements made before appellant was given *Miranda* warnings, 2) failing to declare a mistrial for statements made by the

Commonwealth during its closing argument, and 3) refusing to include the offense of involuntary manslaughter on the verdict slip after several times charging the jury on the elements of the crime. Because we find merit to appellant's final claim of error, we vacate the judgment of sentence for voluntary manslaughter and remand for a new trial.

■ With respect to appellant's first claim, that the trial court should have suppressed statements he made to police prior to receiving *Miranda* warnings, we are limited to a review of the record for support for the trial court's factual findings and the propriety of legal conclusions drawn therefrom, considering only evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted. *Commonwealth v. Daniels,* 404 Pa.Super. 272, 590 A.2d 778 (1991). Our review discloses ample support for the trial court's factual findings, and the absence of legal error in concluding that the statements appellant made were admissible.

Shortly before 1:00 A.M. on March 17, 1993, an officer of the Glenolden Police Department responded to a radio call that a shooting had just occurred within a block or two of his patrol location. When the officer arrived on the scene, he encountered a man in the driveway who advised him that his cousin had been shot, and was still upstairs. As the officer entered the apartment building, he bumped into appellant immediately inside the outer door to the front hall and asked, "What's going on?" When appellant responded, "I am the shooter," the officer asked who was shot. Appellant answered, "Walt was shot; he's an off-duty cop; he's upstairs; he came banging on my door over a parking space we had been fighting over; he scared me and I shot him." Order (Cronin, J.), 7/23/93, at 2. The officer placed appellant in custody, turned him over to officers arriving on the scene, and asked them to put appellant in their car. Appellant made no further statements, and was later transported to the police station.

■ Appellant contends that anything he said after "I am the shooter" should have been suppressed due to the officer's

failure to inform him of his *Miranda* rights. A review of the record, however, supports the trial court's factual findings that appellant was not in custody as he encountered the officer, and that the questions the officer directed to appellant were of a general, investigative nature, designed to verify the identity and number of possible victims. Appellant could have said nothing, or stopped after stating, "Walt," in response to the officer's question, "Who was shot?" Instead, appellant provided additional details. There is no support in the record for a finding other than that appellant's responses to the officer's investigatory questions were spontaneously uttered, not the product of custodial interrogation, and not "calculated to, expected to, or likely to evoke admission." *Daniels,* 404 Pa.Super. at 279, 590 A.2d at 781, *quoting Commonwealth v. Simala,* 434 Pa. 219, 226, 252 A.2d 575, 578 (1969). Appellant's motion to suppress his statements was properly denied.

With respect to appellant's claim that the trial court erred in omitting the charge of involuntary manslaughter from the verdict slip, there is no longer a question under the law of this Commonwealth that if the evidence in a homicide trial supports a verdict of involuntary manslaughter, the offense is "an issue in the case, and a charge on involuntary manslaughter must be given if requested." *Commonwealth v. Draxinger,* 345 Pa.Super. 554, 558, 498 A.2d 963, 965 (1985); *Commonwealth v. Williams,* 537 Pa. 1, 30, 640 A.2d 1251, 1265–66 (1994) ("mercy charge" on involuntary manslaughter in homicide trial, formerly required under *Commonwealth v. Jones,* 457 Pa. 563, 319 A.2d 142 (1974), now limited by *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980), to cases in which evidence supports such a verdict). Stated as a three-part inquiry, we look to see, first, whether appellant made a timely request for an instruction on involuntary manslaughter, second, whether the offense was made an issue in the case, and finally, whether the evidence at trial could support a verdict of involuntary manslaughter.[1] *Commonwealth v. Rogers,* 419 Pa.Super. 122, 135, 615 A.2d 55, 61 (1992).

1. Despite differing interpretations of precisely what quantum of evidence is necessary to "support a verdict," and the source from which it

Appellant was clearly charged with involuntary manslaughter, and the jury was so informed; the trial court briefly outlined the elements of the offense for the jury prior to the Commonwealth's presentation of its case. N.T., 9/15/93, at 35, 38. And there is no dispute that appellant made a timely request for an instruction on involuntary manslaughter.

At the close of its evidence, the Commonwealth notified the trial court and defense counsel that it would withdraw three of the original charges against appellant, including involuntary manslaughter. Defense counsel responded that he would nonetheless request an involuntary manslaughter instruction. The Commonwealth then withdrew its withdrawal of the charge and requested the trial court to "leave Involuntary Manslaughter in." N.T., 9/16/93, at 30.[2]

should derive, we are required to view the evidence in the light most favorable to the defendant. *Commonwealth v. Morris*, 492 Pa. 565, 424 A.2d 1336 (1981); *Commonwealth v. Terrell*, 482 Pa. 303, 393 A.2d 1117 (1978); *Commonwealth v. Bybel*, 399 Pa.Super. 149, 581 A.2d 1380, *vacated on other grounds* (and appellant discharged), 531 Pa. 68, 611 A.2d 188 (1992). *Compare Commonwealth v. Williams*, 490 Pa. 187, 190, 415 A.2d 403, 404 (1980) *and Commonwealth v. White*, 490 Pa. 179, 185, 415 A.2d 399, 402 (1980) (evidence necessary to support an instruction is "trial evidence [that] reasonably would support such a verdict") *with Commonwealth v. Draxinger*, 345 Pa.Super. 554, 558, 498 A.2d 963, 965 (1985) (evidence necessary is "any version of the evidence in a homicide trial, from whatever source, [that] supports a verdict of involuntary manslaughter") *and Commonwealth v. Rogers*, 419 Pa.Super. 122, 135, 615 A.2d 55, 61 (1992) (language of *Draxinger* must be read in light of Supreme Court's mandate in *White* and *Williams;* evidentiary burden includes "all of the evidence from whatever source [that] reasonably [would] support a verdict of involuntary manslaughter").

2. This side-bar discussion followed:

MR. LYNCH [for the Commonwealth]: Your Honor, if it is the position of the Defense to get a charge on Involuntary Manslaughter, then I would reverse my previous statement and leave Involuntary Manslaughter in.

THE COURT: All right.

MR. LYNCH: It's like getting a free bite of the apple.

THE COURT: The Defendant would be entitled to that charge, in fact, if it's in the case.

MR. LYNCH: Yes, sir.

THE COURT: I obviously can't make a ruling on it. However, what I will do, I will permit the charge of Involuntary Manslaughter to remain in the case, permit the Commonwealth to withdraw their withdrawal of that charge.

■ At the close of evidence for the defense and prior to closing arguments, however, the trial court permitted the Commonwealth to withdraw the charge of involuntary manslaughter:

> MR. LYNCH: Your Honor, I had indicated earlier to the Court that it is the Commonwealth's intention to withdraw the charge of Involuntary Manslaughter, albeit the Court has initially told the jury that the Defendant is charged with that, I feel the only comment I would make, and I think it is a fair comment, sir, is that although the Court is going to charge Involuntary Manslaughter, the Commonwealth does not believe it is in this case and we have withdrawn that charge, and I don't have to make any more comment than that, sir.[ ]

> MR. DIMATTEO: Your Honor, I think it is in this case, and I'm going to ask the Court [to] charge on it because [the jury] could find the Defendant acted recklessly.

> MR. LYNCH: Your Honor, *I agree that Mr. DiMatteo is entitled to [the] charge,* I think I'm entitled to say what I just said and nothing more.

> THE COURT: All right. *You're in agreement to say that the Defendant is entitled to a charge, the effect that he directly caused the death of another person by reckless or grossly negligent conduct?*

> MR. LYNCH: Yes, sir, I am. It's my understanding of the law that since that is his defense,[3] sir, that he is entitled to that, and I can't deprive him of it if he requests the Court to

> MR. LYNCH: Yes, sir.
> THE COURT: So that, gentlemen, presently in this case, there are Murder One, Murder Three, Voluntary, Involuntary, and Recklessly Endangering.
> MR. LYNCH: Yes, sir. And I might just state for the record, sir, that in all likelihood it's very probable that I will, at the end of the Defense's case probably still withdraw the Involuntary Manslaughter. I just want to mull it over. I don't want to give him anything for nothing, sir.
> N.T., 9/16/93, at 30–32.

**3.** Appellant claimed self-defense at trial, and the jury was so instructed.

make that charge. I'm not joining with him in that request, sir, by any way, shape, manner or form.

\* \* \* \* \* \*

THE COURT: All right. *The Commonwealth will prepare to withdraw their charge of Involuntary Manslaughter. I will instruct the jury on the charges of Involuntary Manslaughter.*

*Id.,* 9/17/93, at 3–5 (emphasis and footnote added). The pivotal question for our review, then, is whether the evidence at trial would have reasonably supported a verdict of involuntary manslaughter. If it would not, and the Commonwealth's request to withdraw involuntary manslaughter was based upon its belief that the offense was not "in this case[,]" N.T., 9/17/93, at 4, the trial court erred and appellant was not entitled to the instruction in any event, for "it has long been the rule in this Commonwealth that a trial court should not instruct the jury on legal principles which have no application to the facts presented at trial." *White,* 490 Pa. at 182, 415 A.2d at 400. Moreover, "[t]o charge a jury on extraneous offenses in homicide trials is inapposite and detrimental to the sound administration of justice." *Id.,* at 184, 415 A.2d at 401. It was the duty of the trial court to determine, as a matter of law, whether the evidence supported an involuntary manslaughter instruction. If it did, appellant was entitled to be found guilty or innocent of the charge.

The evidence at trial established that appellant and the victim lived in the same apartment building and had a history of arguments over the victim's use of what appellant considered to be his parking space. After work on the night of March 16, 1993, appellant visited a friend who was in the process of completing a firing range, and had loaded and taken along a replica antique black powder pistol, hoping to be able to fire it. Appellant testified that the pistol was the only weapon he owned, that he had only fired it twice in the previous two years since it was given to him, and that he had been told that the only safe way to unload it was to fire it. N.T., 9/16/93, at 119. Appellant testified that it became too dark to fire his pistol at his friend's firing range, and he

returned home at approximately 10:00 P.M. When appellant arrived, he found the victim's car in the "spot I usually parked in[.]" *Id.* at 123. Expecting to be the first to leave in the morning, at approximately 3 A.M., appellant blocked the victim's car with his own, went to his apartment, and fell asleep on the couch, leaving the loaded pistol on the coffee table in front of him. The trial court accurately summarizes the facts leading to the victim's death:

> [T]he defendant was awakened from sleeping on his couch by a loud banging on the door of his apartment. He arose from the couch and his apartment door flew open. The defendant was very scared and thought he needed to defend himself. The defendant stood up, grabbed the pistol and saw a massive silhouette in his doorway. The defendant screamed and started towards the massive silhouette. As the massive silhouette backed into the light of the apartment house hallway, the defendant recognized it to be Walter Smith. The defendant was shaken because of previous run-ins with Walter Smith. The defendant stood by the door of his apartment while Walter Smith stood in the apartment house hallway. The defendant testified that Walter Smith pushed the defendant up against the door and jamb and the defendant had the black-powder pistol at his side. The defendant was off-balance with Walter Smith's chest in his face. Walter Smith recognized the black powder pistol and stepped back from the defendant when the defendant advised Walter Smith that the [ ] pistol was a .44 caliber. Walter Smith moved away from the defendant and as Walter Smith started back up the stairs leading from the second floor to the third floor, Walter Smith turned to face the defendant, placed his hands together and yelled out "I'll show you a fucking arsenal." The defendant believed that Walter Smith meant to kill the defendant; the defendant fired the black powder pistol[,] fatally wounding Walter Smith. The defendant returned to the kitchen and called 911 seeking assistance.

Opinion (Cronin J.), filed 3/24/93, at 8–9 (citations to transcript omitted). Appellant also testified that as he ran back into his

apartment, he remembered the "flash and smoke" of the pistol, but that he "had never aimed it, never saw anything else.... I thought, my God, I fired this gun off. And for all I knew, it could have gone anywhere." N.T., 9/16/93, at 151. Appellant then heard the victim "screaming in pain. And the[n] it hit me, you know, that I must have hit him. And my first thought was to call for help." *Id.*

There were no eyewitnesses to the shooting. The Commonwealth disputes the victim's entry into appellant's apartment, and produced two witnesses who overheard the argument between appellant and the victim. They agreed upon the essential subject matter of the dispute between the victim and appellant, and the length of time the two argued prior to the shooting. However, they presented conflicting testimony with regard to the position of the victim and appellant in the hallway outside appellant's door, and how many times the victim turned and walked away from appellant. They also disagreed on the number of times appellant stated that he would shoot the victim if he touched appellant's truck, which appellant never admitted saying at all. *Id.* at 184, 188. The Commonwealth also admitted into evidence the testimony of the Glenolden Chief of police, who processed appellant at the police station after the shooting. He testified that appellant spontaneously uttered remarks to the effect that he "couldn't believe that he did this, he couldn't believe how stupid he was, this was a stupid thing to do, I can't believe that I did this, and he kept repeating it." N.T., *9/15/93*, at 133.

██  Under 18 Pa.C.S. § 2504(a) involuntary manslaughter requires evidence that the killing resulted from the "doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner." On the basis of the evidence presented at trial, we find that involuntary manslaughter was an issue and that the jury, having rejected appellant's claim of self-defense, could nonetheless reasonably have determined that appellant acted in a reckless or grossly negligent manner in causing the

victim's death.[4]  The trial court, therefore, did not err in acceding to appellant's timely request for such an instruction.

This conclusion is strengthened in light of the jury's verdict acquitting appellant of first and third degree murder, while finding him guilty of reckless endangerment.  To reach this result, the jury was required to find that appellant consciously disregarded the risk of harm that could result from his conduct and *"recklessly engag[ed]* in conduct which placed [the victim] in danger of death or serious bodily injury."  N.T., 9/17/93, at 82; 18 Pa.C.S. § 2705 (emphasis added).

We do not disagree with the trial court's contention that the evidence at trial sustains a finding that appellant committed a "deliberate and intentional act," sufficient to support a verdict of voluntary manslaughter.  Opinion, at 11. While the trial court emphasizes the fact that the "evidence in this case shows a deliberate shooting and the defense was one of self-defense," *id.*, it is stating the obvious to agree that if this were so, no instruction on involuntary manslaughter

4. *Compare Terrell, supra* (where defendant testified he was afraid of victim, had no intention of killing him, and conflicting versions of what occurred were presented, resolution of conflict is for the jury and defendant entitled to involuntary manslaughter instruction), *and Bybel, supra* (new trial awarded for defendant charged and tried on third-degree murder and involuntary manslaughter, where prosecution did not withdraw involuntary manslaughter charge until after the close of evidence, and evidence that defendant intended to shoot at motorcyclist as warning, and shot went astray, would have supported verdict of involuntary manslaughter), *with Commonwealth v. Rogers,* 419 Pa.Super. 122, 615 A.2d 55 (1992) (where all evidence, except defendant's testimony, demonstrates that he fired entire magazine of weapon into occupied vehicle, killing victim, testimony does not support involuntary manslaughter verdict) *and Commonwealth v. Long,* 397 Pa.Super. 140, 579 A.2d 970 (1990), *appeal denied,* 527 Pa. 615, 590 A.2d 756 (1991) (defendant not entitled to instruction on involuntary manslaughter where he admits shooting victim in back as he fled; no issue of reckless or gross negligence raised) *and Commonwealth v. Reed,* 400 Pa.Super. 207, 583 A.2d 459 (1990), *appeal denied,* 528 Pa. 629, 598 A.2d 282 (1991) (defendant not entitled to have jury instructed on law of involuntary manslaughter where victim shot in the face five times at point blank range).

should have issued.[5]  Moreover, we cannot agree with the Commonwealth's argument that there was no prejudice to appellant because he in fact received the involuntary manslaughter instruction he requested.[6]  Appellee's Brief at 9.

5.  Analogously, this Court determined that a claim of accidental shooting and self-defense are not necessarily inconsistent when "the circumstances of the case allow that the accidental injury or death occurred within the course of the actor defending himself." *Commonwealth v. Wilson*, 433 Pa.Super. 28, 639 A.2d 1194 (1994); *Commonwealth v. McFadden*, 402 Pa.Super. 517, 522, 587 A.2d 740, 742 (1991), *quoting Commonwealth v. Mayfield*, 401 Pa.Super. 560, 572, 585 A.2d 1069, 1074 (1991) (en banc).

6.  The trial court argues that since "no party" objected to the exclusion of involuntary manslaughter from the verdict slip Opinion, at 12, the issue was not preserved for appellate review. *See Commonwealth v. Owens*, 437 Pa.Super. 64, 78 n. 8, 649 A.2d 129, 136 n. 8 (1994) (citing *Painter v. Penna. Elec. Co.*, 368 Pa.Super. 334, 336, 534 A.2d 110, 111 (1987), *appeal denied*, 520 Pa. 576, 549 A.2d 136 (1988)).  The trial court apparently relies upon the following exchange in taking the position that an objection to the omission of the charge from the verdict slip, to be timely, must have been made immediately upon the conclusion of the instruction and before the jury retired to deliberate, or be waived:

> THE COURT: The Commonwealth has withdrawn the charge [of] Involuntary Manslaughter, is that correct?
> MR. LYNCH: That's correct, Your Honor.
> THE COURT: Now I will charge the jury to the effect if they find that the facts of this case give rise to a gross or—grossly negligent or reckless conduct, that they will not be able to find the Defendant guilty of any Homicide charge.
> MR. DIMATTEO: I'm sorry, sir, I wasn't listening, could you repeat that?
> THE COURT: All right.  When I—you've asked for a charge and I've agreed to charge on Involuntary Manslaughter.  The charge when describing the elements of Involuntary Manslaughter will be to the effect that if they find the facts of this case arise to grossly negligent or reckless conduct on the part of the Defendant, that they will not— they will acquit the Defendant of any Homicide charge.
> MR. DIMATTEO: Yes.
> THE COURT: Okay, is that correct, Mr. Lynch?
> MR. LYNCH: Yes.

N.T., 9/17/93, at 25–26.  The record establishes, however, that defense counsel did object to the exclusion of the charge from the verdict slip. *Id.* at 105–07.

Contrary to the trial court's conclusion, the verdict of a jury is never final until recorded, *Commonwealth v. Williams*, 279 Pa.Super. 28, 31–32, 420 A.2d 727, 729 (1980), and a trial court may always exercise its discretion to correct an error of substance in a verdict by sending the jury back with additional instructions to deliberate further, *Commonwealth v. Dzvonick*, 450 Pa. 98, 102–103 n. 4, 297 A.2d 912, 914 n. 4

The record establishes that, while technically the jury was charged on the elements of the offense, the trial court's instruction posited the elements of involuntary manslaughter to the jury in the context of an affirmative defense, in an obvious attempt to accommodate both sides:

> THE COURT: ... Now, ladies and gentlemen, I have indicated to you that there are only three Homicide charges that you will consider; Murder in the First Degree, Murder in the Third Degree and Voluntary Manslaughter.
>
> Involuntary manslaughter is a situation when a person causes the death of another person by reckless or grossly negligent conduct. The Defendant's conduct does not have to be a positive kind of action. A failure to act [is] a sufficient conduct as long as the defendant had a legal duty to act. *You may find the defense arises to Involuntary Manslaughter if you are satisfied the following three elements exist: first, that [the victim] is dead; second, that the Defendant's conduct was a direct cause of his death; and third, the Defendant's conduct was reckless or grossly negligent.*
>
> A defendant's conduct including any failure to perform a legal duty is reckless when he is aware and consciously disregards a substantial and unjustifiable risk that death will result from his conduct, the nature and degree of this being such that it is grossly unreasonable for him to disregard it. A defendant's conduct is grossly negligent when he should be aware of a substantial and unjustifiable risk that death will result from his conduct. The nature and degree of the risk being such that it's grossly unreasonable for him to fail to recognize the risk.
>
>       \*      \*      \*      \*      \*      \*
>
> [ ] If you find that the defense had bring them [sic] together in this case, arise to reckless or grossly negligent conduct on the part of the Defendant, you may not find him guilty of Murder or Voluntary Manslaughter.

(1972). We find that the objection, having been made before the jury reached a verdict, was timely.

*Id.* at 79–81 (emphasis supplied). To state that this instruction contains the seeds of confusion is an understatement; it clearly does not comport with the fundamental principle that every jury charge must (1) adequately and accurately reflect the law, and (2) be sufficient to guide the jury in its deliberations. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 154, 578 A.2d 1273, 1274 (1990); *Commonwealth v. Dillon,* 386 Pa.Super. 236, 247, 562 A.2d 885, 891 (1989), *rev'd on other grounds,* 528 Pa. 417, 598 A.2d 963 (1991). Presenting the elements of a criminal offense in the context of an affirmative defense comes perilously close to shifting the burden to the defendant to prove himself guilty of involuntary manslaughter *only* as a means of proving himself not guilty of the greater crimes with which he was charged. This compounded the trial court's error in failing to make a determination that if, consistent with the facts, appellant was entitled to the charge as a matter of law, then the offense should have been included on the verdict slip.

This does not end our inquiry, however. A new trial is not required if we are convinced, beyond a reasonable doubt, that the trial court's error was harmless and could not have contributed to the verdict. *Commonwealth v. Rush,* 529 Pa. 498, 503, 605 A.2d 792, 794 (1992). Under the rule established in *Commonwealth v. Story,* 476 Pa. 391, 406, 383 A.2d 155, 162 (1978), the Commonwealth has the burden of showing, under the facts presented by this case, either that the error did not prejudice appellant or was de minimis, or that the uncontradicted evidence of guilt was so overwhelming, while the prejudicial effect of the error so insignificant, that the error could not have contributed to the verdict. *Commonwealth v. Mayhue,* 536 Pa. 271, 639 A.2d 421 (1994).

After careful review of the copious instructions given the jury, considered within the context of the facts and evidence presented at trial, we are unable to conclude, beyond a reasonable doubt, that the trial court's error may not have contributed to appellant's conviction for voluntary manslaughter. Contrary to the trial court's suggestion, the evidence of appellant's guilt on the voluntary manslaughter charge was

not overwhelming. Even if the evidence could be considered overwhelming, our Supreme Court has determined that where error is found to have contributed to a verdict, it can never be harmless. *Commonwealth v. Rodriguez*, 533 Pa. 555, 561, 626 A.2d 141, 145 (1993). We disagree with the Commonwealth's contention that had the jury found elements of involuntary manslaughter to exist, "they would have found the defendant not guilty[,]" and consequently there is no prejudice to the appellant attributable to the absence of the charge from the verdict slip. This begs the question of prejudice resulting from the possibility that, having found the defendant guilty of involuntary manslaughter, the jury was precluded from returning a verdict of guilt for the charge. Where a timely request for a jury instruction on involuntary manslaughter is made, the offense has been made an issue in the case, and the evidence at trial would support such a verdict, a defendant has the right to have the jury ascertain the degree of guilt on the charge. To hold otherwise would be to concede that the charge serves no purpose.[7]

In line with previous decisions of this Court and our Supreme Court, we conclude further that the ubiquitous nature of language throughout our case law to the effect that a charge on involuntary manslaughter shall be given only where the trial evidence "*reasonably would support such a verdict,*"

---

7. This is not a case where, as a matter of trial strategy, defense counsel declined an instruction to which the evidence entitled the defendant. *See, e.g., Commonwealth v. Morris*, 492 Pa. 565, 424 A.2d 1336 (1981) (as a matter of trial strategy, counsel cannot be ineffective for declining to request involuntary manslaughter instruction, which would have foreclosed possibility of outright acquittal on greater homicide charges); *Commonwealth v. Musi*, 486 Pa. 102, 404 A.2d 378 (1979) (option of outright acquittal would have been eliminated by possibility of returning a verdict of involuntary manslaughter; counsel not ineffective for declining the charge); *Commonwealth v. McGrogan*, 449 Pa. 584, 297 A.2d 456 (1972) (counsel not ineffective for declining voluntary manslaughter charge/claim of self-defense in attempt to gain outright acquittal). In fact, those cases which have dealt with this issue presume that declining an instruction forecloses the possibility of a verdict on the omitted charge; therein lies the tactical strategy. We see no reason for the inverse not to be controlling: where an instruction is warranted, the right to have a verdict returned thereon should be beyond question.

132

means just that: a verdict. *Williams,* 537 Pa. at 30, 640 A.2d at 1266; *Commonwealth v. Smith,* 511 Pa. 343, 356, 513 A.2d 1371, 1377–78 (1986), *cert. denied,* 480 U.S. 951, 107 S.Ct. 1617, 94 L.Ed.2d 801 (1987); *Commonwealth v. Walker,* 491 Pa. 351, 353, 421 A.2d 172, 173 (1980); *Commonwealth v. Williams,* 490 Pa. 187, 190, 415 A.2d 403, 404 (1980); *White,* 490 Pa. at 185, 415 A.2d at 402; *Rogers,* 419 Pa.Super. at 135, 615 A.2d at 61; *Commonwealth v. Reed,* 400 Pa.Super. 207, 231, 583 A.2d 459, 471 (1990), *appeal denied,* 528 Pa. 629, 598 A.2d 282 (1991). It does not require lengthy discussion to reach the conclusion that foreclosing the possibility of returning a verdict on a criminal offense upon which instructions have been issued contributes to the verdict that is returned on the remaining charges. *Rush,* 529 Pa. at 503, 605 A.2d at 794; *Commonwealth v. Turner,* 499 Pa. 579, 584, 454 A.2d 537, 540 (1982). We hold that where sufficient evidence is presented at trial to entitle a defendant to an instruction on a criminal offense, and, upon timely request, the jury is so instructed, the failure to afford the jury an opportunity to return a verdict on the charge is not harmless error beyond a reasonable doubt. *Rush,* 529 Pa. at 503, 605 A.2d at 794.

Having reached this conclusion, we need not address appellant's claim of error regarding the trial court's failure to declare a mistrial. Instead, we vacate the judgment of sentence and remand for a new trial.

Judgment of sentence vacated. Case remanded for a new trial. Jurisdiction relinquished.