J-A22032-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ULYSSES RODRIGUEZ, | |
| Appellant | No. 2163 EDA 2016 |

Appeal from the Judgment of Sentence January 15, 2016
in the Court of Common Pleas of Lehigh County
Criminal Division at No.: CP-39-CR-0000679-2014

BEFORE:  BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 18, 2017**

Appellant, Ulysses Rodriguez, appeals from the judgment of sentence imposed after his jury conviction of voluntary manslaughter.  We affirm.

We take the following factual and procedural background from the trial court's June 16, 2016 opinion and our independent review of the certified record.  At trial in this matter, Michael Frichtman testified that, on January 26, 2013, at approximately midnight, he and the victim were walking home after purchasing cigarettes at a 7-Eleven on Union Avenue in Bethlehem, Pennsylvania, when Appellant approached them and asked if they wanted to buy marijuana.  (*See* N.T. Trial Vol. II, 8/19/15, at 61).  When the men

_____

[*] Retired Senior Judge assigned to the Superior Court.

declined and asked for Appellant's phone number, he aggressively stated, "[Y]ou're not taking my fucking number if you ain't going to buy anything now." (*Id.* at 63; *see id.* at 64). Appellant then walked away to his SUV parked nearby, retrieved marijuana and a handgun from the vehicle, and returned to the men, shoving the bag of drugs in the victim's face, and asking him, "How does this smell?" (*Id.* at 67; *see id.* at 95).

In response, the victim removed his jacket and told Appellant he wanted to fight. (*See id.* at 69). Appellant then pulled the handgun from his waistband, pointed it at the two men, and argued with the victim about fighting. (*See id.* at 72, 74-77). Appellant started walking away ahead of, but in the same direction as Frichtman and the victim, and kept arguing with the victim, eventually firing two shots in his general direction. (*See id.* at 102). When the victim and Appellant were directly in front of each other outside the club, Appellant shot the victim twice in the chest, got into his vehicle, and drove away. (*See id.* at 78-81). During this entire episode, both the victim and Frichtman were unarmed, and Frichtman repeatedly suggested that they should go home. (*See id.* at 73-74, 77-78, 98-99, 106).

Witness, Erica Hampton, described the events similarly. She testified that she heard two men arguing and overheard one of them say, "[s]o you gonna shoot me, shoot me." (N.T. Trial Vol. I, 8/18/15, at 58). She stated that Appellant was backing up as the victim walked toward him. (*See id.* at 61-62). Appellant then fired "at least three" shots toward the victim. (*Id.* at

61). The victim then charged at Appellant and the men "tussled." (*Id.* at 64; *see id.* at 63). She heard "a couple more shots" and observed Appellant run away. (*Id.* at 64; *see id.* at 65).

Appellant testified in pertinent part that, after he put the marijuana in the men's faces, "[He] was able to retreat back to the club. [He] had an open path to the club." (N.T. Trial Vol. III, 8/20/15, at 51). He stated that, after this preliminary interaction, he took two steps backwards, put his gun away, and walked toward that establishment. (*See id.*). Just feet from the door, instead of entering the building, Appellant shot "warning shots" at the victim and Frichtman. (*Id.* at 58, 129). He stated that the victim then ran at him, bear hugged him, and a skirmish began. (*See id.* at 64). Appellant testified that he then intentionally shot the victim. (*See id.* at 131-32).

The forensic pathologist testified that the victim was shot twice in the chest. (*See* N.T. Trial Vol. II, at 13). The first gunshot wound showed that the gun was against Appellant's skin when it was discharged. (*See id.* at 19, 23). The distance of the firearm when the second shot was fired was between "[n]ear contact to within several inches[.]" (*Id.* at 34; *see id.* at 23). The wounds were seven inches apart from each other. (*See id.* at 35).

On August 21, 2015, Appellant was convicted of voluntary manslaughter. On January 15, 2016, with the benefit of a presentence investigation report (PSI), the trial court sentenced him to not less than ten nor more than twenty years' imprisonment, which was outside the aggravated

range of the sentencing guidelines, but within statutory limits. The court denied Appellant's post-sentence motions for judgment of acquittal and to modify sentence on June 16, 2016. On July 8, 2016, Appellant timely appealed.[1]

Appellant raises three issues for this Court's review:

1. Whether the trial court erred in failing to conclude that [he] is entitled to judgment of acquittal because the [C]ommonwealth's evidence was not sufficient to disprove [Appellant's] self-defense claim beyond a reasonable doubt?

2. Whether the trial court erred in failing to conclude that the maximum possible sentence given by the court was unreasonable and excessive given the number of mitigating factors, including [Appellant's] minimal prior record, and the lack of aggravating factors?

3. Whether the trial court erred in failing to conclude that [Appellant] is entitled to a new trial by reason of the court's failure to instruct the jury on involuntary manslaughter as a possible offense?

(Appellant's Brief, at 3).

In his first issue, Appellant argues that the trial court erred in denying his motion for judgment of acquittal where the Commonwealth's evidence was insufficient to disprove his self-defense claim beyond a reasonable doubt. (*See id.* at 12-18). This issue lacks merit.

Our standard of review of a trial court's denial of a motion for judgment of acquittal is well-settled:

---

[1] Pursuant to the trial court's order, Appellant filed a timely concise statement of errors complained of on appeal on August 9, 2016, and, on September 12, 2016, the trial court filed an opinion. *See* Pa.R.A.P. 1925.

A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge.

***Commonwealth v. Packer***, 146 A.3d 1281, 1284, *affirmed*, 2017 WL 3600581 (Pa. filed Aug. 22, 2017) (citation omitted).

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be established by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of a crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Id.*** at 1285 (citation omitted).

Pursuant to section 2503(a)(1) of the Crimes Code, "[a] person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by . . . the individual killed[.]" 18 Pa.C.S.A. § 2503(a)(1). "In order to procure a conviction for voluntary manslaughter[,] the Commonwealth must prove, beyond a reasonable doubt, that the homicide

was not justified. A killing that occurs under the mistaken belief that it was justified constitutes voluntary manslaughter." ***Commonwealth v. Weston***, 749 A.2d 458, 462 (Pa. 2000) (citations omitted). Consequently, courts have commonly referred to unreasonable belief voluntary manslaughter as "imperfect self-defense," because the "self-defense claim is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life." ***Commonwealth v. Tilley***, 595 A.2d 575, 582 (Pa. 1991).

> If the defendant properly raises self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense.
>
> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.
>
> The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence. The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger.
>
> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, *bona fide* belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable

- 6 -

in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

*Commonwealth v. Smith*, 97 A.3d 782, 787 (Pa. Super. 2014) (citations and quotation marks omitted).

Further,

To claim self-defense, the defendant must be free from fault in provoking or escalating the altercation that led to the offense, before the defendant can be excused from using deadly force. Likewise, the Commonwealth can negate a self-defense claim by proving the defendant used more force than reasonably necessary to protect against death or serious bodily injury.

*Id.* at 788 (citations, emphasis, and quotation marks omitted).

In this case, Appellant's actions initiated and then escalated the encounter. He first approached the victim and Frichtman to try to sell them marijuana, and then, when they declined, he went to his vehicle, not to drive away, but to retrieve a gun and marijuana to shove in the victim's face. When the victim reacted by saying he wanted to fight, Appellant, in spite of his clear path by which to retreat, escalated the situation even further by shooting warning shots at the men. When the unarmed victim reacted by bear hugging him, he put a gun against the man's chest and pulled the trigger, shooting him twice, "us[ing] more force than was reasonably necessary to protect against death or serious bodily injury." *Id.* (citation and quotation marks omitted). Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, we conclude that it sustained its burden of disproving self-defense and establishing voluntary manslaughter where

Appellant had an unjustified belief that shooting the unarmed victim in the chest was necessary to defend himself. *See Packer*, *supra* at 1285. The trial court properly denied Appellant's motion for judgment of acquittal. *See id.* at 1284. Appellant's first issue lacks merit.

In his second issue, Appellant challenges the discretionary aspects of his sentence. (*See* Appellant's Brief, at 18-24). Specifically, he maintains that his sentence is excessive in light of mitigating factors. (*See id.*). Appellant's issue lacks merit.

> [A] challenge [to the discretionary aspects of a sentence] is not automatically reviewable as of right. Before we review such a claim on the merits, we engage in a four part analysis to determine:
>
> (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [*see* Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . .
>
> We decide the substantive merit of the claims only if each requirement is satisfied.

*Commonwealth v. Tejada*, 161 A.3d 313, 320 (Pa. Super. 2017) (citations omitted).

In this case, Appellant preserved his issue in a post-sentence motion, timely appealed, and his brief includes a concise statement of the reasons relied upon for appeal. (*See* Appellant's Post-Sentence Motions, 1/22/16, at unnumbered pages 3-7; Notice of Appeal, 7/08/16; Appellant's Brief, at 18-

19). Also, his issue raises a substantial question. *See Commonwealth v. Swope*, 123 A.3d 333, 339 (Pa. Super. 2015) ("[A]n excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question.") (citation omitted). Accordingly, we will review the merits of Appellant's sentencing claim.

Our standard of review of this matter is well-settled:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Johnson*, 125 A.3d 822, 826 (Pa. Super. 2015) (citation omitted). "Our Supreme Court has determined that where the trial court is informed by a [PSI], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted).

Here, the record reflects that the court did not abuse its discretion in sentencing Appellant. It reviewed letters from members of the community, and heard testimony from Appellant, his mother, and the victim's mother. (*See* N.T. Sentencing, 1/15/16, at 5, 43-73). It considered the expert testimony of forensic psychologist Dr. Frank Dattilio, who conducted an evaluation of Appellant. (*See id.* at 6-29). Based on an extensive two-day

- 9 -

interview, psychological testing, questioning of Appellant's mother, and a review of all documentation and reports relative to this case and Appellant's history, Dr. Dattilio concluded Appellant is narcissistic, paranoid, impulsive, and overly defensive. (*See id.* at 9-10, 13-14). He testified that this explains "a lot of his difficulty with reading situations and overreacting[,]" and that "he is prone to misread and misinterpret the actions of others." (*Id.* at 16-17). Dr. Datillio stated that these tendencies could only be overcome after "several years in intensive treatment[.]" (*Id.* at 19).

Additionally, the court put all the reasons for its decision on the record. (*See* Trial Court Opinion, 6/16/16, at 1, 8; *see also* N.T. Sentencing, at 101-03, 105-06). It explained:

> . . . [T]he reasons for deviating from the sentencing guidelines are as set forth in this sheet that the District Attorney has handed to me . . . . The impact of the crime [on] the victim and the victim's family . . . . The impact of [the] crime on the community; [Appellant's] lack of insight or remorse; [and] [Appellant's] numerous prison misconducts . . . listed in the back of the PSI. . . .
>
> \* \* \*
>
> . . . [Appellant's] history and penchant for fighting and disorderly behavior. [Appellant's] future dangerousness, likelihood to reoffend and poor prognosis for rehabilitation as evidenced by his crime, his lack of insight, his prison misconducts, and his psychological evaluation. [Appellant's] involvement in drug dealing at the time of the crime. . . .
>
> \* \* \*
>
> . . . [P]ossession of an illegal firearm which he used in the crime and carried during his drug dealing activities. [Appellant's] flight

and concealment after the crime. . . . Endangerment of others during the crime. . . .

* * *

. . . The decision to kill formed over a relatively lengthy time horizon and [was] not a split second decision. The victim's family['s] recommendation. The arresting officer's recommendation, and the more egregious nature of this crime when compared to the typical voluntary manslaughter. . . . I think what you are talking about is an excessive force . . . where the [victim was] not engaged in illegal activity and otherwise didn't initiate the confrontation. . . .

(N.T. Sentencing, at 101-03, 105-06).

Based on the foregoing, and the fact that the court possessed a PSI, and therefore is presumed to have considered all sentencing factors and mitigating circumstances, we conclude that it properly exercised its discretion in sentencing Appellant. *See Johnson*, *supra* at 826; *Downing*, *supra* at 794. Appellant's second issue does not merit relief.

In his third claim, Appellant maintains that the trial court erred in failing to give the involuntary manslaughter jury instruction. (*See* Appellant's Brief, at 24-28). This issue is waived and would lack merit.

> [Our Supreme Court held] that[,] under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.

*Commonwealth v. Pressley*, 887 A.2d 220, 225 (Pa. 2005) (footnote omitted).

Here, although Appellant requested a charge on involuntary manslaughter, the trial court declined, stating that it "didn't see any evidence which would warrant [such] an instruction . . . ." (N.T. Trial Vol. III, at 158). Appellant did not object. (*See id.*). Therefore, this issue is waived. *See Pressley*, *supra* at 225. Moreover, it would not merit relief.

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Yale*, 150 A.3d 979, 983 (Pa. Super. 2016) (citation omitted). An "[involuntary] manslaughter charge shall be given only when requested, where the offense has been made an issue in the case, and the trial evidence reasonably would support such a verdict." *Commonwealth v. Patton*, 936 A.2d 1170, 1177 (Pa. Super. 2007) (citations omitted). "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner . . . he causes the death of another person." 18 Pa.C.S.A. § 2504(a).

In the case *sub judice*, there was no evidence to support a claim that Appellant's shooting of the unarmed victim was either reckless or grossly negligent. He initiated and escalated the incident, and then intentionally shot the unarmed victim in the chest at very close range. Such a shooting rises above the mere recklessness or accident required to support an involuntary manslaughter charge and, his mere assertion that he did not intend to kill the

- 12 -

victim, does not render his actions involuntary manslaughter. *See Commonwealth v. Briggs*, 12 A.3d 291, 307 (Pa. 2011), *cert. denied*, 565 U.S. 889 (2011) (concluding defendant's shooting of victims in chest and abdomen at close range supported first degree murder charge even where defendant declared he did not intend to kill victims); *Commonwealth v. Murray*, 83 A.3d 137, 151 (Pa. 2013) ("[A] specific intent to kill may be inferred by the use of a deadly weapon upon a vital organ of the body.") (citation omitted).

Based on the foregoing, we conclude that the trial court did not err in denying Appellant's request for a jury instruction on the crime of involuntary manslaughter where "the trial evidence [could not reasonably] support such a verdict." *Patton*, *supra* at 1177; *see Yale*, *supra* at 983.[2]  Appellant's third issue lacks merit.

Judgment of sentence affirmed.

---

[2] Moreover, we are not legally persuaded by Appellant's reliance on *Commonwealth v. McCloskey*, 656 A.2d 1369 (Pa. Super. 1995), *appeal denied*, 668 A.2d 1126 (Pa. 1995). (*See* Appellant's Brief, at 27).  In *McCloskey*, the defendant recklessly fired the gun up the stairs without aiming at the victim, who had initiated the confrontation.  *See McCloskey*, *supra* at 1374 (defendant testifying that he did not aim gun and that, "for all I knew, [the] bullet could have gone anywhere.").  Here, Appellant initiated and escalated the incident, and then intentionally shot the unarmed victim in the chest, at very close range.  Therefore, we do not find *McCloskey* legally persuasive.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17