615 A.2d 55

**COMMONWEALTH of Pennsylvania**

v.

**Eric ROGERS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 1992.

Filed Oct. 1, 1992.

126

---

Michael E. Wallace, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com.

Before CAVANAUGH, OLSZEWSKI and MONTGOMERY, JJ.

OLSZEWSKI, Judge.

Appellant, Eric Rogers, appeals from the judgment of sentence imposed on October 24, 1991, by the Court of Common Pleas of Philadelphia County. Following a jury trial, appellant was sentenced to life imprisonment on April 5, 1991. On October 24, 1991, after post-trial motions were heard and

denied, appellant was sentenced to an additional 2½ to 5 years for possession of an instrument of crime, 5 to 10 years for criminal conspiracy, and 10 to 20 years for aggravated assault. These sentences are to be served consecutive to each other and to the life sentence.

Appellant worked for a man named Craig Haynes and received a salary of $600 a week to watch over Haynes' drug houses. (N.T. 4/2/91 at 2.43, 2.49.) In the spring of 1989, the Haynes group and the Junior Black Mafia (JBM) became engaged in a "war." The JBM was a rival group that conducted the same business as Haynes. Appellant's conviction arose out of an incident that occurred on June 29, 1989. On that date, a crowd had gathered to watch a basketball game at Fourth Street and Washington Avenue. After consulting with Haynes, Byron Massey Lawrence informed appellant that two men sitting in a parked car were JBM members and that they were to "hit" them. (N.T. 4/1/91 at 2.34.)

The victims, Anthony Fletcher and Eric Hurst, were sitting in Fletcher's gold BMW parked on Fourth Street beside the playground. Appellant was armed with a .45 caliber automatic which was given to him by Haynes two days prior to the shooting. Lawrence was armed with a .32 caliber automatic. Appellant repeatedly fired at the car from the rear while Lawrence shot from the front. Eric Hurst, who was shot from behind in the head and chest, fell to the ground and died as he tried to get out of the car. Fletcher ultimately recovered from the gunshot wounds. Raymond Adams, who was familiar with appellant and his accomplice, was an eyewitness to this grisly scene that occurred at approximately 7:15 P.M. (N.T. 4/1/91 at 1.146, 1.58–59; 4/2/91 at 2.65.)

On November 21, 1989, appellant was arrested and gave a voluntary inculpatory statement. At a hearing on March 22, 1991, appellant was unsuccessful in having that statement suppressed. After a jury trial on April 4, 1991, appellant was convicted of murder in the first degree, criminal conspiracy, aggravated assault, and possession of an instrument of crime. Appellant received a sentence of life imprisonment for first-degree murder. Post-trial motions were denied on October

24, 1991, and additional consecutive terms of 10 to 20, 5 to 10, and 2½ to 5 years were imposed. Appellant now appeals from the judgment of sentence.

Appellant raises eleven issues for our review. Because we find appellant's contentions are without merit, we affirm the judgment of the lower court. Initially, we note that appellant's statement of the questions presented is in violation of Pennsylvania Rule of Appellate Procedure 2116(a), which states that the statement of questions presented should not ordinarily exceed fifteen lines and must never exceed one page. Appellant's statement of questions presented exceeds the limit by a half page. Nevertheless, we will address appellant's contentions.

Appellant's first contention is that the trial court erred in admitting, over objection, a portion of appellant's statement relating to prior, wholly unrelated, crimes. Appellant complains that the statement was inflammatory and unrelated to the trial. We disagree.

Admissibility of evidence is a matter addressed to the sound discretion of the trial court and an appellate court may reverse only upon a showing that the lower court abused its discretion. *Commonwealth v. Tedford*, 523 Pa. 305, 328, 567 A.2d 610, 621 (1989).

Evidence of other crimes is generally inadmissible. Such evidence may, however, be admitted in certain circumstances where the evidence is relevant for some other legitimate purpose and not merely to prejudice the defendant by showing him or her to be a person of bad character. *Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264 (1989). A defendant's other criminal acts may be introduced to prove motive; intent; absence of mistake or accident; a common scheme, plan, or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or to establish the identity of the person on trial as the person who committed the crime in issue. *Commonwealth v. Billa*, 521 Pa. 168, 555 A.2d 835 (1989); *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987).

The portion of appellant's statement that appellant objects to having been admitted into evidence established that appellant had previously worked for Craig Haynes by watching Haynes' drug houses. In return, appellant received a salary of $600 per week. It also establishes that appellant was in jail for ten months, during which time he threatened a rival of Haynes. For this deed, appellant received a sum of $500 from Haynes. This statement was read to the jury during trial (N.T. 4/2/91 at 2.43), read by the prosecutor during his closing (N.T. 4/4/91 at 4.39–4.41), and read again during jury deliberations. (*Id.* at 4.101.)

Contrary to appellant's allegations, this evidence does not contain "inflammatory, unrelated biographical material." (Brief for appellant at 8.) The fact that appellant previously worked for the rival of the victims and collected money for protecting this rival demonstrates motive. Without the introduction of this evidence, there would be no apparent link between appellant and the victims.

Appellant's contention that this evidence was irrelevant and inadmissible has been addressed by the Supreme Court in *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985), *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986), and *Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982). In *Colson*, this state's Supreme Court held that evidence that defendant was a drug dealer with the victim's brother who had a strong motive to kill the victim was admissible to show the relationships of the parties involved in the crime. *Colson*, 507 Pa. at 463, 490 A.2d at 823. In *Gwaltney*, evidence that showed that the defendant and the victim were members of rival gangs in Philadelphia was admissible to establish motive. Similarly, the evidence in this case was admissible to show the relationship between the parties that created the motive for murder.

Appellant also argues that the instant case does not fall into that class of cases where the motive is defined with specificity and where the other crime evidence has a particular, direct bearing upon motive. This argument has no merit. Caselaw requires only that the evidence be relevant. *See Common-*

*wealth v. Cannaday,* 404 Pa.Super. 215, 590 A.2d 356 (1991); *Commonwealth v. Colson, supra.* Instantly, the evidence was admissible and relevant to show the motive for murder.

■ Appellant further contends that irrelevant or peripheral evidence concerning drugs is especially objectionable. However, the evidence at issue was relevant to show motive for the shooting. Furthermore, evidence of other crimes, even those involving drug-related activities is admissible to demonstrate motive. In *Commonwealth v. Ramos,* 366 Pa.Super. 624, 532 A.2d 22 (1987), evidence was presented that appellant killed a drug dealer in competition with appellant's friend. Evidence that appellant and his friend had threatened the victim for selling drugs in his territory was admissible. *See also Commonwealth v. Gelber,* 406 Pa.Super. 382, 594 A.2d 672 (1991); *Commonwealth v. Stern,* 393 Pa.Super. 152, 573 A.2d 1132 (1990).

■ Appellant alternatively argues that even if the other crime evidence in appellant's statement was relevant to motive for the crime in question, its prejudicial effect outweighed any probative value. We disagree.

In determining whether evidence is admissible, the trial court should balance the relevancy and evidentiary need for the evidence of distinct crimes against the potential for undue prejudice. *Commonwealth v. Lark,* 505 Pa. 126, 477 A.2d 857 (1984). Where the evidence is relevant, the fact that testimony of another crime may be prejudicial will not make it inadmissible. *Commonwealth v. Gelber, supra, (quoting Commonwealth v. Hall,* 523 Pa. 75, 85, 565 A.2d 144, 149 (1989) *(citing Commonwealth v. Morris,* 513 Pa. 169, 175, 519 A.2d 374, 376 (1986)).

While the admission of this statement may be somewhat prejudicial to appellant, this is outweighed by its relevancy and probative value. As previously stated, the evidence in the present case is relevant to show appellant's motive. It is probative to show a relationship between appellant and a rival of the victims. Indeed, it is the only apparent link between appellant and the victims. For this reason it was admitted

into evidence. It was not offered into evidence to show that appellant is of bad character and has a propensity to commit crimes.

Also, as a further precaution against improper prejudice, the judge instructed the jury that this evidence could only be considered for two purposes: one, to determine whether there was a relationship between appellant and Haynes; and, two, to determine whether this relationship provided a motive for the shooting of Anthony Fletcher and the murder of Eric Hurst. (N.T. 4/4/91 at 4.66.) Therefore, we disagree that the prejudicial effect of this evidence outweighed any probative value.

■ Appellant next contends that the trial court erred in admitting, over objection, testimony concerning appellant's participation in an alleged drug transaction that took place on the Walt Whitman Bridge four months after the murder of Eric Hurst.

The evidence that appellant claims was improperly admitted established that on October 12, 1989, appellant, Lawrence and Haynes were involved in a money drop on the Walt Whitman Bridge. The jury heard that on that date police were alerted to a car stopped on the bridge. The police thought the car had broken down and pushed the car to an exit ramp. Appellant then began to drive away, leaving Lawrence on the bridge. The police proceeded to pull over appellant who claimed not to know who Lawrence was. Meanwhile, another officer picked up Lawrence who was carrying a bag containing $19,900. (N.T. 4/3/91 at 3.20–3.22.) Appellant and Lawrence were arrested, brought to Port Authority and questioned. Later that night, two more cars visited that same spot on the bridge. When the officer pulled up, people ran away down the bridge. When stopped by the police, they gave false identification. One of the men was Craig Haynes. They were also taken to a police station. A woman then showed up at the station asking for directions. Officer Waninger became suspicious when this woman scanned the room and continued to look past him. The officer then looked into the vehicle in which she arrived and saw Lawrence in the car. (*Id.* at 3.23–3.27.)

Appellant mischaracterizes this evidence as an alleged "drug transaction." (Brief for appellant at 20.) No evidence concerning drugs was admitted. Although the Commonwealth did have evidence that this was a drug transaction, the prosecutor agreed not to reveal that cocaine was later found on the bridge.

This evidence was also relevant to prove motive. *Commonwealth v. Gwaltney*, 497 Pa. 505, 442 A.2d 236 (1982). It was the Commonwealth's theory of the case that appellant and Lawrence worked for Haynes and that they conspired to kill the victims, who were rivals of Haynes. This evidence was relevant to show a continuing conspiracy between appellant, Haynes, and Lawrence. Furthermore, appellant's complaint that the bridge incident was four months after the alleged shooting does not preclude the admission of this evidence. Remoteness in time goes to weight, not admissibility. *Commonwealth v. Zdrale*, 397 Pa.Super. 167, 579 A.2d 1309 (1990), *rev'd on other grounds* 530 Pa. 313, 608 A.2d 1037 (Pa., 1992).

■ Appellant contends that even if this evidence was admissible, the prejudicial effect of the evidence outweighs any probative value. He also states that there was no attempt to mitigate the prejudicial impact by delivering an instruction suggesting that the evidence was to be considered only for some limited purpose.

As indicated, the evidence was offered to show the relationship of the parties which gave rise to the motive for the shooting. Moreover, contrary to appellant's contention, the trial judge did deliver a cautionary instruction. The judge instructed the jury to consider the bridge evidence for one purpose only; that is, to show the relationship between conspirators Rogers, Haynes, and Lawrence. (N.T. 4/4/91 at 4.66.) This precautionary instruction was sufficient to guard against prejudice.

■ Appellant further alleges that the court erred by admitting, over objection, a photograph of the decedent at the scene of the shooting. This argument also has no merit.

Decisions regarding the admissibility of photographs are committed to the sound discretion of the trial judge and will not be reversed absent a showing that the trial court abused its discretion. *Commonwealth v. Hernandez,* 404 Pa.Super. 151, 590 A.2d 325 (1991) (*citing Commonwealth v. Liddick,* 471 Pa. 523, 370 A.2d 729 (1977); *Commonwealth v. Petrakovich,* 459 Pa. 511, 329 A.2d 844 (1974)).

It is not for the appellate court to usurp the function of the trial court to balance the alleged prejudicial effect of the evidence against its probative value. *Commonwealth v. O'Shea,* 523 Pa. 384, 400, 567 A.2d 1023, 1030 (1989). In determining the admissibility of the photographic evidence, the trial court must first determine whether the pictures are inflammatory. *Commonwealth v. Young,* 524 Pa. 373, 572 A.2d 1217 (1990). If they are not inflammatory, they are admissible, provided they are relevant and can assist the jury in understanding the facts. Even if the photos are inflammatory, they are admissible if their evidentiary value clearly outweighs the likelihood they will inflame the passions of the jurors. *Commonwealth v. Hernandez, supra.*

In the present case, the photograph in question was a black-and-white photo of decedent's body; decedent had fallen as he tried to get out of the passenger side of the car. No blood was apparent. Upon review of the photograph, we determine that it was not inflammatory. Furthermore, the photo was relevant since it was probative of the position of decedent's body. This was an issue at trial because appellant had claimed that he shot over the car making sure he didn't shoot anyone. (N.T. 4/2/91, at 2.35.) Pursuant to the case law cited above, we find no error in the trial court's admission of this photograph.

■ Appellant next states that the trial court erred in admitting, over objection, a chart indicating that the prosecution expert had concluded within a reasonable degree of certainty that a bullet entering decedent had been discharged from a .45 when in fact he had not reached such a conclusion.

■ This chart was probative of where the bullet came from. There were two guns involved in the shooting: one was a .32 caliber gun fired by Lawrence, the other was a .45 caliber gun fired by appellant. (N.T. 4/2/91, 2.35–2.36.) The officer testified that two bullets, one obtained from the car door and another obtained from the back of the victim's head, were from the .45 caliber gun. The officer determined this because the bullet coming from the door weighed 218.8 grains and the one coming from the victim's head weighed 221 grains. Bullets of a .32 caliber weigh 71 grains while the bullets of a .45 weigh 230 grains. When shot, a bullet loses some of its mass. If its weight is significantly higher than 71 grains it cannot be from a .32 caliber gun. It was Officer Finor's testimony that the bullets in question came from the .45 caliber gun. A chart is authenticated by evidence sufficient to establish that the chart accurately represents that which it purports to represent. L. Packel and A. Poulin, *Pennsylvania Evidence* at § 901.3 (*citing* Wigmore and McCormick). Officer Finor stated that the chart prepared by the Commonwealth correctly represented his testimony. (N.T. 4/3/91, at 3.81–3.82.) Counsel for appellant had the opportunity to cross-examine Officer Finor on this point. If the testimony previously given by Officer Finor was inconsistent with the chart, then such inconsistency was a credibility determination for the jury.

■ Appellant also complains that the chart was prepared by the Commonwealth with the intention of deceiving the jury by false information contained in the chart. There is nothing in the record to support such a claim, and we will not speculate. We will point out that the authenticating witness need not have prepared the exhibit, but must simply have sufficient knowledge to authenticate it. (*Id.* at § 901.3 at 794.) Although Officer Finor did not prepare the chart in question, he had the requisite knowledge necessary to authenticate the chart.

■ Appellant next assigns error to the trial court for denying appellant's request for a jury instruction on involuntary manslaughter. The Pennsylvania Supreme Court ad-

dressed the issue of when a trial court must give an instruction on involuntary manslaughter in *Commonwealth v. White,* 490 Pa. 179, 415 A.2d 399 (1980), and *Commonwealth v. Williams,* 490 Pa. 187, 415 A.2d 403 (1980). In *White* and *Williams,* the Supreme Court set forth the following standard:

> To this end and to *finally* clarify this situation, we now hold that in a murder prosecution, an involuntary manslaughter charge shall be given only when requested, and where the offense has been made an issue in the case and the trial evidence would reasonably support such a verdict.

*White,* 490 Pa. at 185, 415 A.2d at 402. We are bound by the decisions of our Supreme Court and, therefore, our decision herein will be controlled by this statement of the law. It has been held that "[i]f any version of the evidence in a homicide trial, from whatever source, supports a verdict of involuntary manslaughter, then the offense has been made an issue in the case, and a charge on involuntary manslaughter must be given if requested." *Commonwealth v. Draxinger,* 345 Pa.Super. 554, 557, 498 A.2d 963, 965 (1985), *cited in Commonwealth v. Bybel,* 399 Pa.Super. 149, 581 A.2d 1380 (1990). The holding in *Draxinger* must be read considering the Supreme Court's mandate in *White* and *Williams.* Therefore, our review in this case is: first, whether a request was made for the instruction; second, whether involuntary manslaughter was made an issue in the case; and third, whether all of the evidence from whatever source reasonably would support a verdict of involuntary manslaughter.

Under 18 Pa.C.S.A. § 2504(a), involuntary manslaughter requires evidence that the killing occurred due to recklessness or gross negligence. The only evidence in this case that supports a verdict of involuntary manslaughter is the following testimony of appellant:

> I fired over the top of the car making sure I didn't hit anybody. The direction that I was shooting I made sure that no one was standing there before I fired.

Appellant claims that this testimony supports a finding that his actions were only reckless and, therefore, he was entitled to an instruction on involuntary manslaughter. We disagree.

The evidence at trial indicated that appellant was on the scene with a loaded gun he had been given by the leader of the drug gang that employed him. Appellant approached the vehicle and fired the entire magazine of the .45 caliber semi-automatic pistol into the vehicle occupied by the deceased victim and the other victim. The physical evidence at the scene of the crime placed spent .45 caliber cartridges on the ground in the vicinity of where appellant was firing, one .45 caliber bullet in the head of the decedent, and a second .45 caliber bullet in the lower portion of the door of the automobile. All of the evidence at trial was in complete contradiction to appellant's version of the events. All of the evidence, except appellant's testimony, places appellant firing the entire magazine of his weapon *into* an occupied vehicle. Such conduct is not recklessness or gross negligence, it is malice. One would have to disregard all of the evidence except that of appellant in order to have a case where the testimony even remotely supported involuntary manslaughter. The trial evidence in this case could not reasonably support a verdict on involuntary manslaughter. The trial court, therefore, properly denied any such instruction.

 Appellant next contends that the trial court erred in denying appellant's motion to suppress based on the lack of probable cause for issuance of the arrest warrant. Appellant contends that the veracity of the witness mentioned in the affidavit is questionable because the witness wrongly identified co-defendant Raymond Adams as one of the shooters, and also because the witness was an anonymous person. This argument is meritless. Our standard for reviewing such claims is:

In reviewing an order denying a motion to suppress evidence we must determine whether the factual findings of the lower court are supported by the evidence of record. *Commonwealth v. Espada,* 364 Pa.Super. 604, 607, 528 A.2d 968, 969 (1987). In making this determination, we may only consider the evidence of the Commonwealth witnesses and so much of the witnesses for the defendant as, fairly read in the context of the record as a whole, remains uncontradicted. *Id.* If the evidence supports the findings of the lower

court, we are bound by such findings and may reverse only if the legal conclusions drawn therefrom are in error. *Id.* *Commonwealth v. Frank,* 407 Pa.Super. 500, 501, 595 A.2d 1258, 1259 (1991). We note, however, that determinations of credibility of witnesses, as well as the weight placed upon their testimony, is exclusively the province of the suppression court. *Commonwealth v. Mason,* 215 Pa.Super. 22, 608 A.2d 506, 507 (Pa.Super., 1992).

The test in this Commonwealth for determining whether probable cause exists for the issuance of an arrest warrant is the "totality of the circumstances." *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Commonwealth v. Price,* 318 Pa.Super. 240, 464 A.2d 1320 (1983); *Commonwealth v. Moore,* 321 Pa.Super. 1, 467 A.2d 862 (1983). In determining whether probable cause exists, a magistrate is not required to find a showing of criminal activity; mere probability of such criminal activity is sufficient for probable cause. *Commonwealth v. Gray,* 322 Pa.Super. 37, 46, 469 A.2d 169, 173 (1983). Furthermore, the information offered to demonstrate probable cause must be viewed in "a common sense, nontechnical, ungrudging and positive manner." *Commonwealth v. Jones,* 506 Pa. 262, 484 A.2d 1383 (1984). Our duty on appeal is to ensure that the magistrate had a "substantial basis for concluding that probable cause exists." *Commonwealth v. Fromal,* 392 Pa.Super. 100, 114, 572 A.2d 711, 718 (1990) (*quoting Illinois v. Gates, supra,* 462 U.S. at 238–239, 103 S.Ct. at 2332). "A trial court's determination of probable cause is accorded the utmost deference on appeal." *Commonwealth v. Singleton,* 412 Pa.Super. 550, 603 A.2d 1072 (1992) (*quoting Commonwealth v. Potter,* 350 Pa.Super. 61, 67, 504 A.2d 243, 246 (1986)). We must limit our inquiry to the information within the four corners of the affidavit submitted in support of probable cause when determining whether the warrant was issued upon probable cause. *See* Pa.R.Crim.P. 119(a); *Commonwealth v. Edmunds,* 526 Pa. 374, 382, 586 A.2d 887, 891 (1991).

The affidavit in the present case indicated that Detective Augustine's finding of probable cause to arrest was based on:

his opinion that the grand jury presentment was an accurate summary of his petition in the investigation; discussions with other law enforcement personnel; his interview with Anthony Fletcher—the surviving victim; and, other eyewitnesses to the shooting. (Affidavit of Detective Augustine at 2.) Based on this information, an arrest warrant was issued.

The anonymous eyewitness in the grand jury presentment testified under oath. The credibility of this witness was a matter for the fact finder. Detective Augustine's affidavit was based upon the sworn grand jury testimony of this anonymous eyewitness and information obtained through interviews with the other eyewitnesses and police personnel. We find that the anonymous eyewitness's sworn testimony, corroborated with independent police investigation, was sufficient under the totality of circumstances test to issue an arrest warrant. *Commonwealth v. Singleton, supra.* The trial court did not err in denying appellant's motion to suppress based on lack of probable cause for issuance of the arrest warrant.

■ Appellant's next contentions are that the evidence was insufficient to prove conspiracy, murder in the first degree, and aggravated assault; and also that the verdicts were against the weight of the evidence. These claims are without merit.

Initially, we note that these claims are waived. In *Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983) (*en banc* ), we held that we would no longer consider issues preserved where post-trial motions consisted of no more than statements that "the evidence was insufficient to support the verdict," or that the "verdict was against the weight of the evidence." Claims not specifically raised in post-trial motions are waived on appeal. *Commonwealth v. Cardona,* 316 Pa.Super. 381, 386, 463 A.2d 11, 14 (1983); Pa.R.Crim.P. 1123(a), (c)(3). In the present case, the post-trial motions were set forth in boilerplate language and are, therefore, not preserved for appellate review.

Even if these claims were not waived, however, they are meritless. In reviewing a challenge to the sufficiency of the evidence, we must determine:

> ... whether, viewing all the evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson*, 506 Pa. 469, 472–473, 485 A.2d 1102, 1103 (1984) (citation omitted).

■ Contrary to appellant's assertions, the evidence was sufficient to convict appellant of conspiracy under 18 Pa.C.S.A. § 903. Appellant states that there was no evidence that appellant entered into an agreement with the specific intent of promoting or facilitating the crime.

■ Under existing law in Pennsylvania, the Commonwealth need not prove an explicit or formal agreement in order to establish the existence of a criminal conspiracy. *Commonwealth v. Manlin*, 270 Pa.Super. 290, 411 A.2d 532 (1979). Agreement may be shown inferentially by showing the relation, conduct or circumstances of the parties. *Commonwealth v. Jackson, supra.* Overt acts of alleged co-conspirators are sufficient proof of a conspiracy. *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982).

In *Commonwealth v. Monroe*, 356 Pa.Super. 109, 514 A.2d 167 (1986), this Court found that there was sufficient evidence to support a conviction for conspiracy when appellant had gone out drinking with a companion before the robbery, drove to a supermarket with this companion, and appellant drove from the lot with his headlights off when his companion got into the car with the gun. Likewise, there is sufficient evidence in the present case for a conspiracy conviction. Appellant, by his own admission, stated that he worked for Haynes' drug business. Appellant, along with his co-conspirator, shot at the victims because they belonged to the JBM. Subsequent to that shooting, the three conspirators were

picked up by the police in the bridge incident. This is sufficient to find an inferential agreement between appellant, Lawrence, and Haynes due to their relationship in the drug business. Therefore, we find the evidence was sufficient to show that appellant was involved in a conspiracy and that the incident in question was not just a simultaneous shooting as appellant avers.

Appellant next complains that the evidence was insufficient to support a verdict for first-degree murder. First-degree murder is defined by 18 Pa.C.S.A. § 2502 as criminal homicide committed by an intentional killing. The Commonwealth's evidence at trial indicated, at a minimum, that appellant approached the car with a loaded .45 caliber semi-automatic pistol. Upon reaching the rear of the vehicle, appellant opened fire and fired the entire magazine into the occupied vehicle. Appellant has argued there was no evidence of a specific intent to kill. We disagree. That appellant had a specific intent to kill is a reasonable inference from the facts as stated above. Viewing the evidence in the light most favorable to the Commonwealth and allowing all reasonable inferences therefrom, the evidence is sufficient for a first-degree murder conviction.

Appellant also argues that there was insufficient evidence to convict him of the aggravated assault of Anthony Fletcher who survived the shooting. Under 18 Pa.C.S.A. § 2702(a)(1) and (4), a person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily harm to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life;

* * * * * *

(4) attempts to cause or intentionally or knowingly causes bodily injury with a deadly weapon[;].

Appellant states that the evidence was insufficient to show that he intended to cause serious bodily harm to Anthony Fletcher. The fact that appellant shot a full magazine of

bullets into the car, and killed the man in the passenger side next to Anthony Fletcher, leads us to the conclusion that appellant had a specific intent to cause serious bodily injury. Even if appellant did not have specific intent to cause bodily harm, he acted at a minimum recklessly under circumstances indicating extreme indifference to the value of human life. Further, appellant attempted to cause serious bodily injury to Anthony Fletcher with a deadly weapon, regardless of whether a bullet from appellant's weapon struck Fletcher.

Finally, appellant contends that his convictions for criminal conspiracy, first-degree murder and aggravated assault were against the weight of the evidence. Our standard of review is that a verdict will not be deemed as against the weight of the evidence unless so contrary to the evidence as to "shock one's sense of justice." *Commonwealth v. Jensch,* 322 Pa.Super. 304, 469 A.2d 632 (1983).[1]

Regarding appellant's conviction for conspiracy, evidence was presented that appellant was in the drug business with Haynes; that the association between appellant, Haynes, and Lawrence continued after the shooting incident; and that he shot at the "JBM boys" along with Lawrence. In light of this evidence and the evidence discussed above in regard to appellant's meritless challenge to the sufficiency of the evidence, we find that the verdict for criminal conspiracy was not contrary to the weight of the evidence.

Regarding appellant's conviction for first-degree murder, there was eyewitness testimony at trial that appellant fired into the car, appellant admitted firing a .45 caliber handgun, .45 caliber bullets were removed from the victim's head and the car door, and seven .45 caliber shells were found on the ground behind the car. In light of this evidence and the evidence discussed above in regard to appellant's meritless

---

1. In *Commonwealth v. Murray,* 408 Pa.Super. 435, 597 A.2d 111 (1991), this Court affirmed its right and duty to review a trial court's refusal to grant a new trial on the basis that the verdict is against the weight of the evidence. *Contra, Murray,* concurring and dissenting opinion by Olszewski, J. (appellate review of weight of evidence challenges is at variance with the fact-finding province of the jury and not properly the subject of appellate review).

challenge to the sufficiency of the evidence, we cannot say that a first-degree murder conviction is contrary to the weight of the evidence.

■ Appellant's conviction for aggravated assault on Anthony Fletcher was not so contrary to the evidence as to shock our sense of justice where appellant shot into a car where Fletcher was sitting, killing the man on the passenger side.

Because we find that appellant's contentions are without merit, we affirm the judgment of the lower court.

Judgment of sentence affirmed.

CAVANAUGH, J., concurs in the result.