**COMMONWEALTH OF PENNSYLVANIA,**
Appellee

v.

**Bradley D. HACKENBERGER,**
Appellant.

Superior Court of Pennsylvania.

Submitted Jan. 21, 2002.
Filed March 26, 2002.

Richard E. Guida, Harrisburg, for appellant.

Andrew L. Winder, Asst. Dist. Atty., Mifflintown, for Com., appellee.

Before: DEL SOLE, P.J., LALLY–GREEN and TAMILIA, JJ.

OPINION PER CURIAM:

¶ 1 Bradley D. Hackenberger appeals from the November 6, 2000 judgment of sentence imposed following his conviction by a jury of cruelty to animals.[1] We affirm.

¶ 2 On March 23, 2000, at approximately 12:00 p.m., three workers from Pennsylvania Power and Light (PP & L) observed a dog[2] roaming around the area in which they were working. Shortly after the dog left their immediate vicinity, the men heard several gunshots. Thereafter, the men discovered that the dog they had seen earlier had been shot and had died. At some point within that time period, appellant phoned the sheriff's office to report that he had shot a dog.

¶ 3 Appellant was found guilty of the cruelty to animals charge on September 25, 2000. Subsequently, applying the deadly weapon enhancement, the court

---

1. 18 Pa.C.S.A. § 5511(a).

2. The dog, subject of this action, was a yellow lab named Chief, about two and one-half years old (N.T., 9/25/00, at 15).

sentenced appellant to six (6) to twenty-four (24) months less one-day imprisonment. Appellant filed a motion to modify sentence which was denied by operation of law on March 30, 2001. This timely appeal followed.

¶ 4 Appellant raises the following issues for our review: (1) whether counsel was ineffective for failing to seek the removal of two jurors who may have overheard a conversation between appellant and his counsel; (2) whether the court abused its discretion by permitting a photograph of the dog into the jury deliberation room; (3) whether the evidence was insufficient to establish the requisite malice for the charged offense; (4) whether the verdict was against the weight of the evidence; and (5) whether the court erred in applying the deadly weapon enhancement.

 ¶ 5 Appellant initially argues counsel was ineffective for failing to seek the removal of two jurors. Appellant claims that while he was sitting on a bench outside the courtroom discussing trial strategy with counsel, two of the jurors were present.

> To prevail on such a claim, Appellant must demonstrate that (1) the underlying claim is of arguable merit; (2) counsel's course of conduct was without a reasonable basis designed to effectuate his interest; and (3) that he was prejudiced by counsel's ineffectiveness, i.e. if not for counsel's ineffectiveness, there is a reasonable probability that the outcome of the trial would have been different.

*Commonwealth v. Mason,* 559 Pa. 500, 513, 741 A.2d 708, 715 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 81, 148 L.Ed.2d 43 (2000) (citation omitted).

¶ 6 In the instant case, the record does not reflect what, if any, conversation the jurors may have overheard. Appellant simply avers the jurors were present and that counsel should have been aware of a potential problem. We cannot conclude counsel was ineffective where appellant has not provided any indicia of the conversation which took place or evidence to show that trial counsel was cognizant of this matter. *See Commonwealth v. O'Searo,* 483 Pa. 286, 396 A.2d 1173 (1978) (finding counsel could not be ineffective for failing to request a change of venue where he could not have been aware of any impropriety with the jury).

 ¶ 7 Next, appellant argues the court abused its discretion when it permitted a photograph of the dog, Chief, to be viewed by the jury, and further, allowed it to be taken by the jury into the deliberation room. We disagree.

> Decisions regarding the admissibility of photographs are committed to the sound discretion of the trial judge and will not be reversed absent a showing that the trial court abused its discretion.
>
> It is not for the appellate court to usurp the function of the trial court to balance the alleged prejudicial effect of the evidence against its probative value. In determining the admissibility of the photographic evidence, the trial court must first determine whether the pictures are inflammatory. If they are not inflammatory, they are admissible, provided they are relevant and can assist the jury in understanding the facts. Even if the photos are inflammatory, they are admissible if their evidentiary value clearly outweighs the likelihood they will inflame the passions of the jurors.

*Commonwealth v. Rogers,* 419 Pa.Super. 122, 615 A.2d 55, 60 (1992) (citations omitted).

¶ 8 In this case, the photograph in question was a photo of Chief prior to the shooting. While appellant claims this somehow distracted the jury, we cannot agree, as upon a review of the photograph, we are unable to determine that it was inflammatory. Rather, the photo was pro-

bative of Chief's size, which was an essential part of appellant's defense that the dog attacked him prior to the shooting. Therefore, we find no error in the trial court's admission of the photograph.

¶ 9 Appellant also argues the evidence was insufficient to sustain a conviction for cruelty to animals. In particular, appellant contends the malice element of the offense has not been met.

> In reviewing the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt. The Superior Court may not weigh the evidence and substitute our judgment for that of the finder of fact. The trier of fact, in passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence presented. The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Clark,* 761 A.2d 190, 192 (Pa.Super.2000), *appeal denied,* 565 Pa. 636, 771 A.2d 1278 (2001) (citations omitted).

¶ 10 Appellant claims the evidence merely established that he killed the dog. Critically lacking, according to appellant, is any indication that the killing was done with malice. Relevantly, the Crimes Code in pertinent part defines cruelty to animals as follows:

> **(a) Killing, maiming or poisoning domestic animals or zoo animals, etc.—**

> (1) A person commits a misdemeanor of the second degree if he willfully and maliciously:

> (i) Kills, maims or disfigures any domestic animal of another person or any domestic fowl of another person.

18 Pa.C.S.A. § 5511(a)(1)(i). This Court has defined malice as follows:

> Malice exists where there is a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." Where malice is based on a reckless disregard of consequences, it is not sufficient to show mere recklessness; rather, it must be shown the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A defendant must display a conscious disregard for almost certain death or injury such that it is tantamount to an actual desire to injure or kill; at the very least, the conduct must be such that one could reasonably anticipate death or serious bodily injury would likely and logically result.

*Commonwealth v. Kling,* 731 A.2d 145, 147–148 (Pa.Super.1999), *appeal denied,* 560 Pa. 722, 745 A.2d 1219 (1999) (citations omitted).

¶ 11 The testimony, viewed in the light most favorable to the Commonwealth, reflects that Michael Meiser arrived at his home on March 23, 2000 to discover that his dog, Chief, was missing (N.T., 9/25/00, at 15). Employees of PP & L, Steve Gantt and Scott Peck, had seen the dog roaming around their work area at approximately 12:00 p.m. *Id.* at 27, 47. The men observed the dog for a time, then the dog wandered off. Shortly thereafter, the

men, along with their supervisor, William Lyter, heard two gunshots. *Id.* at 30, 48. Upon the firing of a third shot, the three men saw the dog attempting to cross a road. *Id.* at 41, 48, 59. Two more shots followed. *Id.* The three men were able to see someone shooting at the dog, although they could not identify the shooter. At some point appellant telephoned the sheriff's office to report that he had shot a dog. *Id.* at 80.

¶ 12 The evidence presented was clearly sufficient to support a finding of malice. The court, sitting as the fact-finder, apparently chose to disbelieve appellant's defense that he was defending himself from the attack of a vicious dog, and rather chose to infer malice from the use of the weapon and the attendant circumstances. "It is settled, of course, that the trier of fact is free to believe all, part, or none of a witness's testimony." *Commonwealth v. Hunter*, 381 Pa.Super. 606, 554 A.2d 550, 553 (1989). Accordingly, we must conclude that the Commonwealth has met their burden.

 ¶ 13 Appellant complains the verdict was against the weight of the evidence, however, he did not raise this issue in the trial court and further, the court did not address the issue. A challenge to the weight of the evidence must first be raised in the trial court and failure to do so constitutes a waiver of the claim. *Commonwealth v. Widmer*, 547 Pa. 137, 689 A.2d 211 (1997), *aff'd*, 560 Pa. 308, 744 A.2d 745 (2000). Thus, as neither appellant nor the trial court addressed this issue prior to the time of appeal, this argument is waived.

 ¶ 14 Finally, appellant challenges the court's application of the deadly weapon enhancement. Appellant claims that since the owner of the dog was not present at the scene of the crime, the enhancement should not have been applied. We disagree.

¶ 15 The relevant provision of the sentencing guidelines provides:

## DEADLY WEAPON ENHANCEMENT

§ 303.10(a) Deadly Weapon Enhancement.

(1) When the court determines that the offender possessed a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Possessed Matrix (§ 303.17). An offender has possessed a deadly weapon if any of the following were on the offender's person or within his immediate physical control:

(i) Any firearm, (as defined in 42 Pa.C.S.A. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S.A. § 913), or

(iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the defendant intended to use the weapon to threaten or injure another individual.

(2) When the court determines that the offender used a deadly weapon during the commission of the current conviction offense, the court shall consider the DWE/Used Matrix (§ 303.18). An offender has used a deadly weapon if any of the following were employed by the offender in a way that threatened or injured another individual or in the furtherance of the crime:

(i) Any firearm, (as defined in 42 Pa.C.S.A. § 9712) whether loaded or unloaded, or

(ii) Any dangerous weapon (as defined in 18 Pa.C.S.A. § 913), or

(iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

(3) There shall be no Deadly Weapon Enhancement for the following offenses:

Possessing Instruments of Crime

Prohibited Offensive Weapons

Possession of Weapon on School Property

Possession of Firearm or Other Dangerous Weapon in Court Facility

Simple Assault (18 Pa.C.S.A. § 2701(a)(2))

Aggravated Assault (18 Pa.C.S.A. § 2702(a)(4))

Violation of the Pennsylvania Uniform Firearms Act

Any other offense for which possession of a deadly weapon is an element of the statutory definition.

204 Pa.Code § 303.10(a).

¶ 16 Appellant does not contest that he possessed and used a deadly weapon in killing the dog. Rather, appellant argues the enhancement cannot apply where neither the owner of the dog nor any law enforcement person was present at the scene.

 ¶ 17 The principles governing statutory construction apply in our review. Generally, our object is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S.A. § 1921(a). The plain words of a statute cannot be disregarded where the language is free and clear from all ambiguities, *Commonwealth v. Heberling*, 451 Pa.Super. 119, 678 A.2d 794, 795 (1996), and it is only when a statute is unclear that we may embark upon the task of ascertaining the intent of the legislature by reviewing the necessity of the act, the objective to be obtained, the circumstances under which it was enacted and the mischief to be remedied. *Id.* We recognize, therefore, that our object is to ascertain and effectuate the intention of the Sentencing Commission. Thus, we first determine whether the language it used is free and clear from all ambiguities.

¶ 18 We first examine the language of the guidelines to determine whether they are clear and unambiguous on their face. Section 303.10(a)(1) addresses when the offender *possesses* a deadly weapon during the commission of the current conviction offense. Section 303.10(a)(1) also provides that an offender has *possessed* a deadly weapon if any of the following were on the offender's person or within his immediate physical control: "(i) Any firearm, (as defined in 42 Pa.C.S.A. § 9712) whether loaded or unloaded; **or** (ii) Any dangerous weapon (as defined in 18 Pa.C.S.A. § 913); **or** (iii) Any device, implement, or instrumentality designed as a weapon or capable of producing death or serious bodily injury where the court determines that the defendant intended to use the weapon to threaten or injure another individual." § 303.10(a)(1)(i)(ii)(iii) (emphasis added).

¶ 19 Under section 303.10(a)(1), each type of deadly weapon is categorized in a disjunctive fashion. Thus, the deadly weapon can be a firearm. It can be a dangerous weapon. Or, it can be a device capable of producing death or serious bodily injury and intended by defendant to be used to threaten or injure a person where the court determines that the defendant intended to use the weapon to threaten or injure another individual. This guideline contains no ambiguity. Thus, for purposes of appellant's case, the plain meaning of section 303.10(a)(1) is that *as long as a defendant possessed a firearm, as defined in section 303.10(a)(1)(i), then section 303.10(a)(1) applies.*

¶ 20 Section 303.10(a)(2) provides that a defendant "used" a deadly weapon [3] when the defendant employed a deadly weapon

---

**3.** A deadly weapon is defined in a similar, but not identical fashion, to the definition under

in a way that threatened or injured another individual *or* in the furtherance of the crime. Again, the disjunctive is used here. This guideline contains no ambiguity. Thus, the plain meaning of section 303.10(a)(2) is that *when the court determines that the offender used a firearm during the commission of the offense, the guideline applies when the offender used the firearm in the furtherance of the crime.*

¶ 21 Here, appellant possessed a firearm during the commission of the current conviction offense, i.e., cruelty to animals. Thus, section 303.10(a)(1) applies. Appellant used a firearm in the furtherance of the crime of cruelty to animals. Thus, section 303.10(a)(2) applies. And, section 303.10(a)(3) does not apply because cruelty

to animals is not a specifically enumerated offense and the possession or use of a firearm is not an element of the crime of cruelty to animals.

¶ 22 We now address appellant's contention that the dog's owner or a law enforcement officer had to be present for the sentencing enhancement provisions to apply. As the above reflects, the presence of the dog's owner, a law enforcement officer or, indeed, anybody is not a requirement of the sentencing enhancement provisions when a firearm is used.[4] Here, it was appellant's possession of a firearm and use of a firearm in the furtherance of a crime that triggered the application of the deadly weapon enhancement provisions of the Sentencing Guidelines.[5] Appellant's argument lacks merit.[6]

section 303.10(a)(1). Under section 303.10(a)(2), a deadly weapon is (i) Any firearm, (as defined in 42 Pa.C.S.A. § 9712) whether loaded or unloaded, or (ii) Any dangerous weapon (as defined in 18 Pa.C.S.A. § 913), or (iii) Any device, implement, or instrumentality capable of producing death or serious bodily injury.

4. We do note, however, that other individuals were in relative proximity to the incident, i.e., three PP & L workers were at the scene.

5. Moreover, we observe that appellant does not contest that he possessed and used a deadly weapon in killing the dog.

6. Our respected colleague dissents arguing that the deadly weapons enhancement applies only where the deadly weapon is applied to individuals. Such an argument is not supported by the language of section 303.10(a)(1) or by the plain meaning of the language of section 303.10(a)(1). As stated in the text, section 303.10(a)(1)(i) and (ii) do not speak to individuals. Rather, the focus of section 303.10(a)(1) is on the offender's *possession* of an item that is, or can be used in certain circumstances as, a deadly weapon.

The dissent focuses on the language of one subsection, section 303.10(a)(1)(iii). That subsection deals only with the situation where

the offender possessed a "device, implement or instrumentality designed as a weapon or capable of producing death or serious bodily injury" where the court determines that the defendant intended to use the weapon to threaten or injure another individual. The weapon defined in section 303.10(a)(1)(iii) is the stated device, implement or instrumentality.

Section 303.10(a)(1)(iii) follows section 303.10(a)(1)(i) and (ii) *in the disjunctive*. Section 303.10(a)(1)(i) provides that firearms, alone, trigger the deadly weapon enhancement provisions under section 303.10(a)(1). Therefore, if an offender possesses a firearm, the deadly weapon enhancement provisions are triggered.

The dissent also argues that the language of the enhancement provisions reflect an intent to punish only wrongs against mankind and not animals. We fail to discern that intent. Rather, the intent we discern is to punish those who possess and use deadly weapons in the commission of an offense because of the enhanced risk of death or serious injury because of such use. The focus of section 303.10(a)(1) is on the offender's *possession* of a deadly weapon. The only situation where the provisions ultimately focus on the ultimate victim is in section 303.10(a)(1)(iii). Thus, section 303.10(a)(1) reflects an intent to focus solely on the offender's possession of a firearm without regard to the ultimate victim.

¶ 23 Since appellant's claims lack merit, there is no basis upon which to disturb the findings of the trial court.

¶ 24 Judgment of sentence affirmed.

¶ 25 Concurring and Dissenting Statement by DEL SOLE, P.J.

DEL SOLE, P.J., Concurring and Dissenting:

¶ 1 I join in all but that portion of the Majority's Opinion which affirms the application of the Sentencing Guidelines' deadly weapon enhancement to Appellant's use of a gun to kill a dog.

¶ 2 Unlike the Majority, I read the provision in question to proscribe the use of a weapon where its intended purpose is directed toward harming an individual, not an animal. No matter how much empathy one may have for an animal killed for no justifiable reason, I remain of the view that this provision was enacted to penalize someone for possessing or utilizing a deadly weapon intended to do harm to a person. There was no evidence presented in this case that any individual was placed at risk due to Appellant's conduct. Because I believe the objective of the enhancement provision is to punish wrongs against humanity, and not nature or animals, I would remand this matter for resentencing without application of the deadly weapon enhancement.