J-S51019-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OMAR ALI ROLLIE | |
| Appellant | No. 2837 EDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004832-2013

\*\*\*\*\*

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| OMAR ALI ROLLIE | |
| Appellant | No. 2885 EDA 2014 |

Appeal from the Judgment of Sentence September 5, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0005439-2013

BEFORE: GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED AUGUST 24, 2015**

---

[*] Retired Senior Judge assigned to the Superior Court.

Omar Ali Rollie appeals from the judgment of sentence imposed in the Court of Common Pleas of Delaware County after a jury found him guilty of three counts of attempted murder,[1] three counts of aggravated assault,[2] three counts of terroristic threats,[3] three counts of recklessly endangering another person,[4] one count of possession of a controlled substance with the intent to deliver ("PWID"),[5] and one count of possession of drug paraphernalia.[6] Upon careful review, we affirm.

On July 23, 2013, Abdul Nix, Nasire Muhammad, and Ismaile Tasiu were standing in a parking lot after leaving a store. Tasiu was talking to the owner of the store, and Nix and Muhammad were about to get into their rental car when another car drove up next to theirs. As summarized by the trial court:

> After five or ten minutes of Nix waiting for Tasiu, the car approached the rental car and made suspicious moves, including speeding up and positioning so the front of the car was facing toward the rental car. Mr. Omar Rollie then exited this second car, walked toward Nix, and asked why they were looking at him. Nix responded that they were not looking at him and were

---

[1] 18 Pa.C.S. §§ 901(a), 2502(a).

[2] 18 Pa.C.S. § 2702(a)(3).

[3] 18 Pa.C.S. § 2706(a)(1).

[4] 18 Pa.C.S. § 2705.

[5] 35 P.S. § 780-113(a)(30).

[6] 35 P.S. § 780-113(a)(32).

just standing; however, Rollie continued to walk toward them and asked the question again. Nix then responded a second time and started explaining to Rollie that they were just picking up a part. Rollie then said that "I got something for you," turned around, went to the back of his car, opened the trunk, took out an object covered in a sheet, laid aside an umbrella, and unwrapped the sheet to reveal a "long rifle." At this point, Nix and [Muhammad] were in the car while Tasiu was running toward the car and got in as Nix was backing up.

Rollie was pointing the rifle "directly at [the rental] car." Rollie was in front of his own car and between 15 and 20 feet away from the back of Nix's car. Nix observed Rollie aiming at him and pulling the trigger twice as Nix was backing up. Nix did not see either bullet hit the car. In court, Nix identified Omar Rollie as the man with an AK47 who pointed it at the rental car and shot twice. Tasiu, owner of the construction company, affirmed that Rollie had aimed at the rental car and shot twice. Once away from the scene, Nix dialed 911.

Officer Anthony Peticci, one of the officers who responded to the 911 call, found "31 baggies of yellow tinted small zip-lock baggies" in Rollie's left back pocket after he ordered Rollie down on the ground and handcuffed him. Officer Peticci believed these zip-lock baggies to contain marijuana and marijuana was confirmed after field testing.

Officer James Fiore was also a responding officer with Officer Peticci. Officer Fiore observed a "camera bag" inside the open door of Rollie's running car. Officer Fiore found marijuana in a freezer bag and in a sandwich bag; empty, yellow, tinted zip-lock containers; a digital scale; and cocaine in sandwich bags. Officer Fiore noted that the digital scale was "commonly used" to weigh various narcotics and the "one-by-one inch [yellow] zip-lock containers" that were found were "commonly used to package marijuana for sale."

Detective Christopher Sponaugle also testified at trial as a qualified expert. Detective Sponaugle was assigned to the Narcotics Unit with the Delaware County Criminal Investigation Division. His expert opinion was that the drugs were possessed with the intent to deliver. He based this opinion on the packaging and quantity of the bags. The detective noted that the 31 marijuana bags are considered "nicks on the street," which sell for $5.00 each. This shows that Rollie would have to

buy each individual pack for a total of $155. This means Rollie would have paid $155 for about an ounce of marijuana, which was divided among 31 "nick" bags, instead of paying the usual $80 rate for an ounce not individually packaged. The detective noted that it would make no sense for a user to buy 31 individual bags for simple consumption. The same thought process was applied to the seven grams of marijuana "quarters" that would cost more to buy individually than in bulk. Detective Sponaugle also stated that the unused small zip-lock bags and the scale were for a seller, as a buyer would never carry those around.

Trial Court Opinion, 3/25/15, at 2-4 (internal citations omitted).

On June 26, 2014, after a three-day jury trial, Rollie was convicted of attempted murder, PWID, possession of drug paraphernalia, and other related offenses. On September 5, 2014, the court sentenced him to an aggregate term of 25 to 52 years' incarceration and 9 years' probation. On October 3, 2014, Rollie filed a timely notice of appeal challenging the sufficiency of the evidence with regard to his attempted murder, PWID, and possession of drug paraphernalia convictions.

With respect to Rollie's challenges to the sufficiency of the evidence:

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Commonwealth v. Lynch*, 72 A.3d 706, 707-08 (Pa. Super. 2013) (internal citations and quotation marks omitted).

Section 2502 of the Crimes Code defines murder as follows:

**§ 2502. Murder.**

**(a) Murder of the first degree.—**A criminal homicide constitutes murder of the first degree when it is committed by an intentional killing.

18 Pa.C.S. §2502(a).

Section 901 of the Crimes Code defines criminal attempt as follows:

**§ 901. Criminal Attempt.**

**(a) Definition of attempt.—**A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime.

18 Pa.C.S. § 901(a).

First, Rollie claims the evidence was insufficient to prove beyond a reasonable doubt that he possessed the specific intent to kill because he failed to strike any of the victims or their car when he opened fire in the direction of the victims' car. However, the trial court concluded that the Commonwealth presented sufficient evidence to prove beyond a reasonable doubt that Rollie acted with malice and possessed the specific intent that supports his conviction for attempted murder. "Specific intent and malice may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Arrington*, 86 A.3d 831, 840 (Pa. 2014); *see also Commonwealth v.*

***Rogers***, 615 A.2d 55 (Pa. Super. 1992) (malice established where defendant fired weapon into occupied vehicle).

The trial court summarized the evidence presented by the Commonwealth at trial as follows:

> Testimony supported that Rollie had suspiciously parked his car facing the group. He asked intimidating questions of why they were looking at him and threatened that he had something for them. He then took the time to go to the back of his car, open the trunk, unwrap the AK47, put aside the wrap and an umbrella, walk to the front of his car, aim at the vehicle with three people inside, and fire his weapon twice at the vehicle. Thus, the fact-finder had sufficient direct evidence to satisfy the sufficient evidence standard. Alternatively, the totality of the circumstances supports an inference from the fact-finder that Rollie had the necessary intent for attempted murder.

Trial Court Opinion, 3/25/15, at 8-9.

We agree with the trial court that the evidence, viewed in the light most favorable to the Commonwealth, was sufficient to sustain the verdict. ***Lynch***, ***supra***.

Rollie also claims the evidence was insufficient to sustain his conviction for PWID and possession of drug paraphernalia because the car Rollie was driving belonged to another individual not involved in this matter, and therefore, the drugs might not have belonged to Rollie.

The Controlled Substance, Drug, Device and Cosmetic Act prohibits PWID and possession of drug paraphernalia as follows:

**§ 780-113. Prohibited acts; penalties**

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

. . .

> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering, or possessing with intent to deliver, a counterfeit controlled substance.
>
> . . .
>
> (32) The use of, or possession with intent to use, drug paraphernalia for the purpose of planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packing, repacking, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this act.

35 P.S. § 780-113(a)(30), (32).

In order to sustain Rollie's convictions for PWID, the Commonwealth must establish that he possessed a controlled substance with the intent to deliver it. *Commonwealth v. Kirkland*, 831 A.2d 607, 609 (Pa. Super. 2003). "The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case." *Id.* When the substance is not found on the defendant's person, the Commonwealth must prove that the defendant had constructive possession of the substance, or "exercise[d] a conscious dominion over the illegal substance[.]" *Commonwealth v. Valette*, 613 A.2d 548, 550 (Pa. 1992). "An intent to maintain a conscious dominion may be inferred from the totality of the circumstances." *Id.*, citing *Commonwealth v. Macolino*, 469 A.2d 132, 134 (Pa. 1983).

"[C]ircumstantial evidence may be used to establish a defendant's possession of drugs or contraband." **Valette**, 613 A.2d at 550.

In this case, the drugs in question were found in the vehicle Rollie was driving. Although the vehicle was not registered to Rollie, he was its sole occupant, indicating his control over the vehicle. **See Commonwealth v. Micking**, 17 A.3d 924, 926 (Pa. Super. 2011) (finding that because appellant was sole occupant of car and possessed key to unlock glove compartment, he had control over contraband in vehicle). The car Rollie was driving contained marijuana, cocaine, baggies, and a digital scale. There were 31 yellow tinted baggies of marijuana found on Rollie's person, and some of the baggies found in the vehicle were also tinted yellow. Detective Sponaugle testified to Rollie's intent to deliver by explaining that the separation of marijuana into small baggies is consistent with intent to deliver. The recovery of the digital scale, which is commonly used to weigh drugs for the purpose of bagging and selling, and the baggies found on Rollie's person and car, is sufficient to sustain the verdicts for PWID and possession of drug paraphernalia.

Accordingly, we agree with the trial court that the evidence was sufficient to sustain the verdicts for attempted murder, PWID, and possession of drug paraphernalia.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/24/2015</u>